Dannette PRESSLEY, Administratrix of the Estate of Mary Frances Brown, deceased, Dannette Pressley, an individual and Dorothy Harris, an individual Appellee,

v.

The TRAVELERS PROPERTY CASUALTY CORPORATION, a corporation, Wayne D. Evans Insurance Agency and Glenn Evans, an individual Appellant.

Superior Court of Pennsylvania.

Argued Sept. 19, 2002.
Filed Feb. 12, 2003.

---

4. Since we conclude that Appellant did give proper notice, we need not discuss her fourth issue.

Michael J. Seymour, Pittsburgh, for Evans, appellant.

Avrum Levicoff, Pittsburgh, for Travelers Property Casualty, appellant.

Richard B. Tucker, Pittsburgh, for Harris, appellee.

Before: LALLY–GREEN, BENDER, and GRACI, JJ.

GRACI, J.:

¶ 1 This is an appeal in a declaratory judgment action. Appellants, Wayne D. Evans Insurance Agency (hereinafter "Evans Agency"), Glenn Evans, an individual (hereinafter "Evans"), and Travelers Property Casualty Corporation (hereinafter "Travelers"), appeal the Order entered October 17, 2001, in favor of Appellees, Dannette Pressley, Administratrix of the Estate of Mary Frances Brown, deceased, Dannette Pressley, an individual, and Dorothy Harris, an individual (hereinafter "Pressley"). A verdict was entered in favor of Pressley and jointly and severally against Evans Agency, Evans, and Travelers. The order appealed from designated Pressley's decedent as an insured effective January 26, 1997, and therefore, an eligible claimant for all underinsurance and first party benefits coverage. The order also dismissed, without prejudice, the cross claim for indemnity by Travelers against Evans Agency and Evans as being premature. For the reasons that follow, we affirm the order of the lower court.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 This declaratory judgment action was initiated by Pressley, as noted above, following the death of Brown on March 16, 1997, when she was struck by an automobile. The complaint sought a declaration of whether the decedent had coverage for underinsurance (UIM) and first party benefits under the Travelers policy. In its answer and new matter, Travelers responded that the policy expressly excluded coverage because the decedent was a non-resident relative of the insured, her daughter (Pressley), and she was not operating one of the vehicles covered under the policy at the time of her accident. Travelers denied that the agent who acted on the policy, Evans, had made representations to

the decedent's daughter, who was the policyholder, inconsistent with the terms of the policy. Travelers also responded in its new matter that, if Evans had made the representations, he was acting outside the scope of any agency relationship. Travelers demanded judgment on its behalf.

¶ 3 Evans also filed an answer and new matter, seeking a judgment in his favor because he did not provide any agreement to insure Pressley's decedent and because he is not an insurance company which provides coverage. Pressley responded to Evans' new matter by asserting that she reasonably relied on the representations that the decedent would have the same coverage that she had, so that Evans should be held responsible for providing benefits coverage if Travelers is not. Travelers then amended its new matter to provide that, if it is found liable for coverage, Evans should be found solely liable or, alternatively, jointly and severally liable for any damages that Pressley is entitled to recover. In the alternative, Travelers requested that Evans be found responsible for indemnifying Travelers in any amount that Pressley is adjudged to recover from Travelers.

¶ 4 At the conclusion of a non-jury trial, the trial judge made detailed findings of fact and conclusions of law and rendered a verdict in favor of Pressley and against Travelers, Evans Agency, and Evans. This appeal followed.

¶ 5 We adopt the learned trial court's findings of fact.

Evans is the owner of Evans Agency. As part of its ordinary course of business, Evans Agency submitted applications for homeowners, automobile and other policies of insurance for Aetna Property and Casualty Insurance ("Aetna"). N.T., 10/11/01, Vol. I, at 15. Aetna recently merged with or into Travelers. *Id.* at 11. Evans Agency was an agent of Travelers during the time period from January 1, 1997 through May 30, 1997. *Id.* at 15.

Pressley only personally met Evans one time in 1994 when he was called by a Harrisburg auto dealer to provide insurance coverage for a Ford Escort automobile she purchased in February 1994. Through the years, Pressley purchased automobile and homeowners policies through Evans both when Pressley lived in Harrisburg and thereafter when she lived in Pittsburgh. *Id.* at 15–16. Whenever Pressley wished to modify or question her insurance coverage, she would simply telephone Evans and he would confirm all changes via telephone. *Id.* at 61–62.

On August 22, 1995, Evans placed Pressley's automobile coverage with Aetna. On May 29, 1996, Pressley, by telephone, informed Evans that she became title owner of a 1986 Mercury Cougar which Evans added to Pressley's automobile insurance policy. N.T., 10/11/01, Vol. I, at 16.

On January 26, 1997, Pressley had a telephone call with Evans, during which she informed him that her mother, Mary Brown, was a driver of a vehicle listed on the policy. *Id.* at 16. Evans advised that since Brown was the primary driver of the vehicle, she should be added to Pressley's insurance policy so that she would be covered by Pressley's insurance. Pressley agreed with Evans' advice and instructed Evans to add her mother to her policy. Pressley asked that her mother have the precise coverage that she had on the policy. Evans said that he would add Brown to Pressley's insurance policy with the same exact coverage that Pressley had. *Id.* at 63–64. In 1997 Pressley's automobile insurance policy provided full tort automobile coverage with underinsured, non-

stacking coverage for $305,000.00 for each accident and first-party benefits including medical expenses up to $25,000.00, income loss limited to $25,000.00, and funeral expense and accidental death limits of $2,500.00 and $10,000.00 respectively. *Id.* at 62. Evans assured Pressley that this addition would be made effective immediate [*sic*] that same day. *Id.* at 64.

Evans never asked Pressley where Brown lived or if Brown lived with Pressley. Brown did not live with Pressley. N.T., 10/11/01, Vol. I, at 63. Pressley reasonably relied on the assurances of Evans that her mother had the same coverage as her, effective on January 26, 1997, irrespective of Brown's residence. N.T., 10/11/01, Vol. II, at 32–33.

At the conclusion of the phone call, Evans requested that when Pressley mailed in her next renter's insurance premium that she also forward her mother's Social Security number and Pennsylvania driver's license number for his file. N.T., 10/11/01, Vol. I, at 69. At no time did Evans ever tell Pressley that this requested information was required as a precondition to coverage before he could add Brown to Pressley's policy. *Id.* at 74–75.

Evans failed to add Brown to Pressley's policy as promised on January 26, 1997. *Id.* at 79. On March 16, 1997, Brown was killed when she was struck by a drunk driver. On March 17, 1997, Pressley called Evans to inform him that her mother had been killed and she asked him how she could recover benefits since Pressley believed that Brown was covered by her insurance since January 26, 1997. *Id.* at 84–85. At first Evans denied that Brown was covered by the policy because he never received Brown's Social Security number and driver's license number. Evans then acknowledged that he had promised to add

Brown to the policy on January 26, 1997. At no time did Evans question Pressley as to where Brown resided. In fact, he assumed that Brown resided with Pressley. *Id.* at 87–88.

On March 17, 1997, after learning of Brown's death, Evans telephoned Travelers and attempted to have Brown added to Pressley's policy as a listed driver of the Cougar automobile. N.T., 10/11/01, Vol. I, at 17. Evans did not inform the Travelers representative that he was already aware that Brown was dead and that a claim was being made for coverage. Evans specifically asked the Travelers representative to backdate the effective date of Brown's addition to Pressley's policy so it would be effective as of January 26, 1997. *Id.* at 96–97.

Travelers computer system was unable to backdate the effective date of Brown's addition to Pressley's policy to the requested date of January 26, 1997. Rather, they could only backdate the effective date of the addition to March 11, 1997, the date of the last change made on the policy. Evans asked that Brown's addition to Pressley's policy be added with an effective date of March 11, 1997, five days prior to Brown's death. Evans requested that Travelers add Brown as a listed driver on the policy so that she or her estate would be eligible for benefits under the policy. Those benefits included first-party and underinsured motorist benefits. *Id.* at 97. Travelers added Brown to Pressley's policy retroactively with an effective date of March 11, 1997. *Id.* at 101–102.

On March 19, 1997, Daniel Hank Williams, Brown's brother, telephoned Evans to inform Evans that he was handling Brown's affairs and asked what needed to be done. Evans acknowledged to Williams that Brown was cov-

ered under Pressley's policy and that he was already aware of her death. Evans gave Williams a telephone number for Travelers' Pittsburgh office and told him to call them direct. *Id.* at 103. Williams dialed the number given to him by Evans and reached Travelers representative, Ruth Lorey. Lorey advised that she too was aware of the accident and acknowledged that Brown was covered under Pressley's policy. At no time did Lorey or anyone else ever indicate that there would not be coverage for this loss. N.T., 10/11/01, Vol. II, at 3–4.

On March 20, 1997, Lorey sent a letter confirming the substance of her conversation with Williams. Without reserving any rights, Lorey again acknowledged that Brown was covered under Pressley's policy for first-party benefits including $25,000.00 for medical charges, $10,000 for an accidental death benefit and $2,500.00 for funeral expenses. *Id.* at 4–5. Pressley reasonably relied on the assurances of Travelers based upon the March 20, 1997 letter from Ruth Lorey that her mother was covered for all available coverages under the policy. *Id.* at 34.

On March 23, 1997, Attorney Homer Walton, a friend of Pressley's, discussed the terms of Brown's coverage with Evans. Walton asked Evans about the coverage available for Brown under Pressley's policy. Evans acknowledged that there was first party benefits coverage for Brown since she was on Pressley's policy. When asked about underinsurance coverage, Evans said there was no underinsurance coverage because Pressley never forwarded Brown's Social Security number and driver's license number as requested. *Id.* at 6–7.

Upon learning that there was a potential underinsurance claim, Travelers made no more acknowledgements of cov-

erage and Thomas Lighthall from Travelers sent a letter to Pressley on March 21, 1997 saying that the claim was being investigated. *Id.* at 16. On March 31, 1997, Mr. Lighthall sent a Reservation of Rights letter to Pressley advising her, inter alia, that Travelers was conducting an investigation of the claim, and was reserving all rights under the policy. N.T., 10/11/01, Vol. II, at 105.

¶ 6 The lower court entered the above-referenced order of October 17, 2001, and in response thereto, Evans Agency and Evans filed a notice of appeal at 1971 WDA 2001 and Travelers filed a notice of appeal at 1996 WDA 2001. By Order dated February 7, 2002, appeals 1971 and 1996 WDA 2001 were listed consecutively before a single panel of this Court for purposes of argument or submission.

¶ 7 Evans Agency and Evans now raise the following issues on appeal:

I. Whether an insurance agency and agent who are neither an insured nor an insurance company can be found liable jointly and severally with the insurance company where the only claim being presented is to have coverage declared pursuant to the Pennsylvania Declaratory Judgments Act?

II. Whether Plaintiff's Decedent was an insured under the motor vehicle policy in question effective January 26, 1997, and as such eligible for under insurance and first party benefits?

Brief for Appellant, at 3. Travelers now raises the following issues on appeal:

I. Whether the trial court erred in failing to apply the clear and unambiguous terms and conditions of the insurance policy, which under the instant facts precludes coverage pursuant to the resident relative exclusion contained in the policy?

II. Whether the trial court erred in finding that an insured is entitled to rely on the alleged statements of an insurance agent where the insured acknowledges she received, but failed to read her insurance policy including the clear and unambiguous terms of the policy in question?

III. Whether the trial court erred in finding that the reasonable expectations of an insured circumvent the clear and unambiguous terms and conditions of the policy?

IV. Whether the trial court erred in finding the insurer jointly and severally liable with its agent who acted outside the scope of his authority, where the insurer, predicated upon the misrepresentations of its agent, mistakenly initially informed the insured there was coverage for certain benefits, prior to the insurer determining the resident relative exclusion contained in the policy precluded coverage?

V. Whether the trial court erred in ruling that the insurer's indemnity claims against its agent were premature since the uncontroverted evidence, in conjunction with the trial court's findings of facts and conclusions of law yield the inescapable conclusion that the agent acted outside the scope of his agency relationship, and that had the agent not exceeded the scope of his authority, the terms and conditions of the policy clearly preclude coverage?

Brief for Appellant, at 4.

¶ 8 For the reasons that follow, we affirm the decision of the lower court.

## II. SCOPE AND STANDARD OF REVIEW

When reviewing the decision of the trial court in a declaratory judgment action, our scope of review is narrow. *O'Brien v. Nationwide Mutual Insur-* *ance Co.*, 455 Pa.Super. 568, 689 A.2d 254, 257 (1997). Consequently, we are limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed or whether the trial court abused its discretion. *Walker v. Ehlinger*, 544 Pa. 298, 676 A.2d 213, 214 n. 2 (1996). The test is not whether we would have reached the same result on the evidence presented, but whether the trial court's conclusion can reasonably be drawn from the evidence. Where the trial court's factual determinations are adequately supported by the evidence we may not substitute our judgment for that of the trial court. *Clearfield Volunteer Fire Department v. BP Oil*, 412 Pa.Super. 29, 602 A.2d 877 (1992), *appeal denied*, 531 Pa. 650, 613 A.2d 556 (1992).

*Ross Dev. Co. v. Advanced Bldg. Dev.*, 803 A.2d 194, 195–196 (Pa.Super.2002).

[T]he findings of the trial judge in a non-jury case must be given the same weight and affect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

*PARC Holdings, Inc. v. Killian*, 785 A.2d 106, 110 (Pa.Super.2001) (citation omitted).

## III. DISCUSSION

¶ 9 We will begin by addressing the issues raised by Evans Agency and Evans on appeal. Evans Agency and Evans first contend that the trial court erred in finding them jointly and severally liable with Travelers under the Pennsylvania De-

claratory Judgments Act. Brief for Appellants, at 7. They argue that neither an insurance agency nor insurance agent are parties to the insuring agreement and that no relief was requested against them by Pressley in the declaratory judgment action. *Id.*

An action for declaratory judgment is available to obtain a declaration of the existing legal rights, duties, or status of the parties where the declaration will aid in the determination of a genuine, justiciable controversy. *Fidelity Bank v. Pennsylvania Turnpike Commission,* 498 Pa. 80, 444 A.2d 1154, 1158–1160 (1982); *Nationwide Mutual Insurance Co. v. Cummings,* 438 Pa.Super. 586, 652 A.2d 1338, 1340 n. 5 (1994), *allo. denied,* 540 Pa. 650, 659 A.2d 988 (1995). A declaratory judgment action is particularly appropriate in construing contracts of insurance in order to determine whether an insurer is obligated to defend and/or indemnify one claiming under the policy. *Liberty Mutual Insurance Co. v. S.G.S. Co.,* 456 Pa. 94, 318 A.2d 906, 907–908 (1974); 42 Pa.C.S. § 7533 (construction of documents) (citation omitted). The proper construction of an insurance policy is an issue which may be resolved as a matter of law in a declaratory judgment action. *Alexander v. CNA Insurance Co.,* 441 Pa.Super. 507, 657 A.2d 1282, 1284 (1995). *Redevelopment Authority of Cambria County v. International Ins. Co.,* 454 Pa.Super. 374, 685 A.2d 581, 586–587 (1996).

¶ 10 The Declaratory Judgments Act provides, *inter alia:*

Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations *whether or not further relief is or could be claimed.* No action or proceeding shall be open to objection on the ground

that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and *such declaration shall have the force and effect of a final judgment or decree.*

42 Pa.C.S.A. § 7532 (emphasis added).

¶ 11 The lower court found that

Evans, an authorized insurance agent, is required to exercise the skill and knowledge normally possessed by members of that profession to make sure that the coverage sought by the insured is the coverage received. N.T., 10/12/01, at 41. Evans was negligent in failing to ask where Brown resided when he assured Pressley that Brown would be immediately added to Pressley's policy on January 26, 1997.

*Id.* at 45.

¶ 12 We agree with the lower court that Evans, as an agent of Travelers, was negligent in failing to fulfill his duty of obtaining all of the information from Pressley needed to properly advise Travelers. *Id.* at 47. As a licensed insurance agent, Evans was required to exercise the skill and knowledge normally possessed by members of that profession and his failure to do so rendered him liable for any loss of coverage. The Restatement (Second) of Torts, § 299A (1965). Furthermore, the conclusion that Travelers was negligent was proper because "an insurer is liable for the acts of an agent who had authority to bind coverage and had advised the policyholder that he had done so." *Id.* at 49–50; *see also Sands v. Granite Mut. Ins. Co.,* 232 Pa.Super. 70, 331 A.2d 711 (1974).

¶ 13 Based on the representations made by Evans, having authority as an agent to bind Travelers, the lower court properly determined that Evans Agency and Evans were jointly and severally liable with Trav-

elers for any loss of coverage.[1] *Collister v. Nationwide Life Ins. Co.,* 479 Pa. 579, 388 A.2d 1346 (1978). Evans had made representations leading Pressley to believe that Brown was covered under her insurance policy and thus, the trial court did not err in concluding that he is liable for his actions.

¶ 14 With respect to the second issue raised by Evans Agency and Evans, they incorporate by reference Travelers' Brief. Thus, we will now address the issues raised by Travelers. The first three issues raised by Travelers will be reviewed together. Travelers contends that the trial court erred:

1) in failing to apply the clear and unambiguous terms and conditions of the insurance policy, which under the uncontroverted facts precludes coverage pursuant to the resident relative exclusion contained in the policy; 2) in finding that Pressley is entitled to rely on the alleged statements of Evans where she concedes she received, but failed to read the clear and unambiguous terms of her insurance policy; and 3) in finding that the reasonable expectations of Pressley circumvent the clear and unambiguous terms and conditions of the policy.

Brief for Appellant Travelers, at 4.

¶ 15 Travelers argues that Brown, deceased, was not a family member as defined by the policy and was not occupying a covered automobile within the terms of the policy and thus, because she was not a covered person, Pressley is not entitled to recover under the policy. *Id.* at 16–17. The lower court concluded that a clear and unambiguous contract provision must be given its plain meaning, unless to do so would be contrary to clearly expressed public policy. N.T., 10/12/01, at 96. It also concluded that the conduct of Evans and Travelers was such that Pressley has a right to be covered by what she was told she was covered and to get what she thought she bought. *Id.* at 94.

¶ 16 Contrary to Travelers' contention, "normal contract principles [a]re no longer applicable in insurance transactions." *Collister,* 388 A.2d at 1351.[2]

Because the insurer is in the business of writing insurance agreements, the recent trend in insurance cases has been away from strict contractual approaches towards a view that insurance policies (and other insurance contracts) are no longer private contracts in the traditional sense (if they ever were). The traditional contractual approach fails to consider the true nature of the relationship between the insurer and its insureds. Only through the recognition that insurance contracts are not freely negotiated agreements entered into by parties of equal status; only by acknowledging that the conditions of an insurance contract are for the most part dictated by the insurance companies and that the insured cannot "bargain" over anything more than the monetary amount of coverage purchased, does our analysis approach the realities of an insurance transaction.

*Id.* at 1353.

¶ 17 We find *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa.

---

1. We note that because the lower court concluded that coverage for Brown existed, the joint and several verdict is viewed as a declaration that had coverage not been found, Travelers, Evans and Evans Agency would have been liable. *See* 42 Pa.C.S.A. § 7532; Order, 10/17/01.

2. *But see Nationwide Mut. Ins. Co. v. Johnson,* 450 Pa.Super. 519, 676 A.2d 680, 684 (1996) ("An insurance policy is a contract and stands on no different grounds than any other contract" *citing Tonkovic, infra* ).

300, 469 A.2d 563 (1983), as relied upon by Travelers, to be clearly distinguishable from the present case. In *Standard Venetian Blind*, the insured purchased a general liability policy which protected · his business from claims by third parties for injuries to their persons or property resulting from his negligence. The policy contained a clear and unambiguous exclusion for damages caused to his own products. This exclusion was for damages not normally covered under a liability policy. Under these circumstances, the Court determined that the insured could not avoid the consequences of an exclusion contained in the policy by alleging failure to read or understand the policy. *Standard Venetian Blind*, 469 A.2d at 567.

¶ 18 The Pennsylvania Supreme Court later explained its decision in *Standard Venetian Blind* in *Tonkovic v. State Farm Mutual Auto. Ins. Co.*, 513 Pa. 445, 521 A.2d 920 (1987), and distinguished *Standard Venetian Blind* from cases where the insured receives a policy containing changes in the coverage for which he originally applied. The Court found that

> [A] crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested, and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for. When the insurer elects to issue a policy differing from what the insured requested and paid for, there is clearly a duty to advise the insured of the changes so made. The burden is not on the insured to read

the policy to discover such changes, or not read it at his peril.

*Tonkovic*, 521 A.2d at 925. (emphasis added).

¶ 19 We agree with the trial court that this case parallels *Tonkovic* rather than *Standard Venetian Blind* because Pressley did not receive the coverage she requested. The *Tonkovic* Court reiterated its position regarding the role of the courts relative to the expectations of insureds and their insurance policies.

> The reasonable expectation of the insured is the focal point of the insurance transaction involved here. *Beckham v. Travelers Insurance Co.*, 424 Pa. 107, 225 A.2d 532, 537 (1967). Courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled. Thus, regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents (whether they be applications, conditional receipts, riders, policies, or whatever), the public has a right to expect that they will receive something of comparable value in return for the premium paid.... Through the use of lengthy, complex, and cumbersomely written applications, conditional receipts, riders, and policies, to name just a few, the insurance industry forces the insurance consumer to rely upon the oral representations of the insurance agent.... Courts must examine the dynamics of the insurance transaction to ascertain what are the reasonable expectations of the consumer. *See, e.g., Rempel v. Nationwide Ins. Co.*, 471 Pa. 404, 370 A.2d 366 (1977).

*Tonkovic*, 521 A.2d at 926.[3]

◼ ¶ 20 "Consumers, such as [Pressley], view an insurance agent, such as [Ev-

---

**3.** The Supreme Court in *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 109 n. 8 (1999) noted that the

reasonable expectations doctrine applied in *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346 (1978) "to protect non-

ans], as one possessing expertise in a complicated subject." *Rempel v. Nationwide Life Ins. Co., Inc.*, 471 Pa. 404, 370 A.2d 366, 368 (1977). "It is therefore not unreasonable for consumers to rely on the representations of the expert rather than on the contents of the insurance policy itself." *Id.* at 368.

¶ 21 The trial court found that Pressley had requested identical coverage for Brown and that Evans assured her that Brown would be added to Pressley's policy with identical coverage beginning immediately on January 26, 1997. Thus, Evans created a reasonable expectation in Pressley that Brown was covered by Pressley's policy. Therefore, we affirm the trial court's finding that Brown is an insured entitled to first-party and underinsurance benefits as it has more than adequate support in the evidence.

▮ ¶ 22 Travelers contends that Pressley had a duty to read the policy which she possessed prior to her conversation with Evans and that the failure to read does not circumvent its clear and unambiguous terms. Brief for Appellant, at 24, 26. We note that the endorsement adding Brown to Pressley's policy had not been issued as of the date of Brown's death, and thus, nothing in the policy existed to suggest that the representations made by Evans were not valid. Even had the endorsement been issued to Pressley prior to Brown's death, however, Pressley's expectation of coverage was reasonable.

▮ ¶ 23 "[T]he policyholder has no duty to read the policy unless under the circumstances it is unreasonable not to read it." *Rempel*, 370 A.2d at 369 (no duty

commercial insured from policy terms not readily apparent" and *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 521 A.2d 920 (1987) "to protect non-commercial insured

to read into life insurance policy even though coverage differed from representation of agent). "When the insurer elects to issue a policy differing from what the insured requested and paid for, there is clearly a duty to advise the insured of the changes so made." *Tonkovic*, 521 A.2d at 925. "The burden is not on the insured to read the policy to discover such changes." *Id.* At no time did Evans indicate to Pressley that her policy differed from the requested coverage, that is, coverage for Brown under Pressley's policy identical to Pressley's coverage. Without any indication of change, we agree with the trial court that Pressley was under no obligation to read the policy.

▮ ¶ 24 Next, Travelers contends that the trial court erred in finding Travelers jointly and severally liable with Evans as it is tantamount to a finding of waiver/estoppel. Brief for Appellant, at 30. Contrary to Travelers contentions, the trial court found that Travelers was not estopped from denying coverage because it paid funeral benefits. N.T., 10/11/01, Vol. I, at 134. The lower court's finding of coverage was based on its determination that Travelers' agent had created a reasonable expectation of coverage in Pressley which was binding on Travelers. "[A] principal is liable to innocent third parties for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances or misfeasances of his agent committed in the course of his employment, although the principal did not authorize, justify or participate in, or indeed know of, such misconduct, or even if he forbade the acts or disapproved of them." *Aiello v. Ed Saxe Real Estate, Inc.*, 508 Pa. 553, 499 A.2d 282, 287 (1985).

from deception". Here, too, we are concerned with a non-commercial insured. Hence, the reasonable expectations doctrine applies.

¶ 25 The lower court determined that Evans was negligent in his handling of Pressley's application for insurance because, despite his knowledge of the policy's exclusions, he failed to ask if Brown resided with Pressley. Thus, it properly concluded that Travelers was obligated to provide coverage.

 ¶ 26 Finally, Travelers argues that the trial court erred in ruling that its' indemnity claim against Evans was premature. Brief for Appellant, at 36. The trial court acknowledged that it had the authority to rule on this issue but that it was discretionary under the Declaratory Judgments Act. N.T., 10/12/01, at 127–128; *Erie Ins. Exchange v. Claypoole,* 449 Pa.Super. 142, 673 A.2d 348 (1996). The decision regarding the duty to indemnify can await the resolution of the underlying action and a court may specifically decline to rule on the issue of indemnity. *Redevelopment Authority of Cambria County,* 685 A.2d at 586; *Unionamerica Ins. Co. v. Johnson,* 806 A.2d 431 (Pa.Super.2002). The lower court determined that there are issues to be decided in the future which may or may not implicate indemnity. N.T., 10/12/01, at 130. Thus, the lower court's decision to dismiss the indemnity claim as premature was not improper as it was in its discretion to do so.[4] 42 Pa. C.S.A. § 7532; *Johnson,* 806 A.2d at 434.

## IV. CONCLUSION

¶ 27 For the aforementioned reasons, we affirm the Order of the lower court.

¶ 28 Order affirmed.

¶ 29 LALLY–GREEN, J., files a concurring and dissenting opinion.

---

4. We draw a distinction between *Bianculli v. Turner Constr. Co.,* 433 Pa.Super. 237, 640 A.2d 461 (1994), where the trial court was found to have abused its discretion in dismissing the cross-claim for indemnity, and the

LALLY–GREEN, J., Concurring and Dissenting:

¶ 1 While I agree that the trial court properly determined that Brown is an insured entitled to first-party and underinsurance benefits, I reach this conclusion on grounds different than those of the Majority. However, I do not agree with the Majority's determination that Evans or Evans Agency is jointly and severally liable along with Travelers.

¶ 2 This Court has stated "an insurance policy is a contract and stands on no different grounds than any other contract." *Nationwide Mutual Ins. Co. v. Johnson,* 450 Pa.Super. 519, 676 A.2d 680, 684 (1996), *citing Tonkovic v. State Farm Mut. Auto. Ins. Co.,* 513 Pa. 445, 521 A.2d 920 (1987). Interestingly, the Majority notes this rule of law stated in *Nationwide* in Footnote 2 of its opinion but fails to address this rule or otherwise discuss why it is inapplicable to the case at bar. Rather, the Majority relies upon the reasonable expectations doctrine adopted by our Supreme Court in *Collister v. Nationwide Life Ins. Co.,* 479 Pa. 579, 388 A.2d 1346 (1978). However, the reasonable expectations of the insured are not the first step in this Court's analysis of an insurance contract. Our Supreme Court has stated the following:

> The task of interpreting an insurance contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be con-

present case, where the indemnity claim was dismissed as being premature, to be addressed at a later time after a review of further issues.

strued in favor of the insured and against the insurer, the drafter of the agreement. Where however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

*Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (1999) (citations omitted). The Court also stated that "[t]he polestar of our inquiry, therefore, is the language of the insurance policy." Id. (emphasis added).

¶ 3 Further, our Supreme Court in *Madison* noted the existence of the reasonable expectations doctrine. The Court observed that the appellant sought application of the doctrine regardless of the express terms of the insurance policy. While the Court determined that the appellant failed to develop this argument and, therefore, declined to address it, the Court did note that the doctrine has been applied in "very limited circumstances." *Madison*, 735 A.2d at 109 n. 8.

¶ 4 Thus, it is clear that this Court's first level of inquiry must be the language of the contract, which manifests the intent of the parties. Rather than examining the contract, the Majority immediately performs an analysis of whether Brown is entitled to coverage under the reasonable expectations doctrine. I do not believe the reasonable expectation doctrine should be the first step in this Court's analysis of the issue. Therefore, I would decline to apply the reasonable expectations doctrine without first examining the language of the contract in order to determine whether Brown is entitled to relief.

¶ 5 Under the language of the insurance policy as of the date of Brown's injury, Brown was not a named insured and was not a member of Pressley's household entitled to benefits. On March 16, 1997, Brown was killed when struck by a drunk driver. On March 17, 1997, Pressley telephoned Evans to inform him of the accident and her mother's death. Evans informed Pressley that Brown had not been added to Pressley's insurance policy due to Pressley's failure to submit Brown's social security number and driver's license number. Therefore, as of the date of Brown's injury, she was not covered under Pressley's insurance policy as a named insured or as a member of Pressley's household.

Although Brown was not covered by Pressley's insurance policy as of the date of her injury, she was subsequently brought within the scope of coverage through a backdated modification of Pressley's policy. On March 17, 1997, Evans called Travelers and requested that Brown be added to Pressley's policy, effective January 26, 1997. Travelers informed Evans that the change could be backdated only to March 11, 1997, the date of the last change to Pressley's policy. Thus, Travelers effected the change to add Brown to Pressley's policy, effective March 11, 1997.

The effect of the backdated modification done in this case is to bring a non-covered injury within the scope of coverage of the insurance policy. Despite the fact that Brown was not insured on the date of her accident, she was added as a named insured effective March 11, 1997, five days prior to the accident. Thus, the backdating of the change to Pressley's policy brings Brown within the scope of the insurance policy. Therefore, Brown's estate is entitled to collect the benefits due under the insurance policy.

¶ 6 The trial court found that Evans mislead Travelers. N.T., 10–11/01, vol. II, at 55. Travelers argues that but for Evans' actions about adding an insured who was already deceased, it would not be subject to a claim by Brown's estate. Travelers' Brief at 38. However, "where

one of two innocent persons must suffer, the loss should be borne by him who put the wrongdoer in a position of trust and confidence and thus enabled him to perpetrate the wrong." *Artkraft Strauss Sign Corp. v. Dimeling,* 429 Pa.Super. 65, 631 A.2d 1058, 1061 (1993).

¶ 7 In the instant case, if we nullify the backdated modification Evans procured through misrepresentation, Brown would not be entitled to benefits under the insurance policy. On the other hand, if we enforce the backdated modification, Travelers would be required to pay considerable benefits to an insured person who was not alive at the time she was added to the insurance policy. Either Brown or Travelers must bear the loss caused by Evans misrepresentation.

¶ 8 Unlike Brown, Travelers put Evans in a position of trust and confidence, which allowed him to perpetrate a wrong. By accepting Evans' representations about Brown without seeking proof or confirmation, Travelers permitted Evans to commit a fraud upon it. Travelers, not Brown, is in a position to restrict backdating procedures or eliminate backdating altogether. Therefore, Travelers must bear the loss resulting from the misuse of its trust and confidence. Accordingly, the backdated modification adding Brown to Pressley's insurance policy stands and brings Brown within the scope of coverage of Pressley's policy as of the date of her injury.

¶ 9 The next point upon which I disagree with the Majority concerns the holding that Evans is jointly and severally liable with Travelers for the benefits owed under the insurance policy. The Majority states, "We note that because the lower court concluded that coverage for Brown existed, the joint and several verdict is viewed as a declaration that had coverage not been found, Travelers, Evans and Evans Agency would have been liable." Majority

Opinion at 11 n. 1. The Majority upholds the trial court's ruling that Brown is entitled to benefits due under the policy. Nevertheless, the Majority addresses the issue regarding what would happen if coverage had not been found.

¶ 10 This Court recently stated the following:

> As a general rule an actual case or controversy must exist at all stages of the judicial process, and a case once actual may become moot because of a change of facts. The appellate courts of this Commonwealth will not decide moot or abstract questions except in rare instances when the question presented is one of great public importance, or when the question presented is capable of repetition yet escaping judicial review. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

*Johnson v. Martofel,* 797 A.2d 943, 946 (Pa.Super.2002) (citations omitted).

¶ 11 In the instant case, the trial court found that Brown was covered by Pressley's insurance policy. The Majority holds that coverage exists for Brown, a result with which I concur. The Majority notes that the joint and several liability is an alternative holding had Brown been found not to be covered by the insurance policy. Since the joint and several liability issue is moot, this Court should not address the issue. *Johnson.*

¶ 12 Since I would hold that Brown's injury is within the scope of Pressley's insurance policy under the language of the contract, I would decline to employ the reasonable expectations doctrine. Nevertheless, I agree that Brown is covered by the insurance policy and, therefore, concur in that result reached by the Majority. However, I would decline to address the issue of joint and several liability as to

Evans and Evans Agency because the issue is moot. For this reason, I respectfully dissent from the conclusion reached by the Majority.