**Dansbury Choo Choo Express v. RBLA of PA**

C.P. of Monroe County, No. 12391 CV 2010

*Alan C. Milstain* and *Kristopher B. Chiesa*, for plaintiffs.

*John C. McNamara*, for defendant.

ZULICK, *J.*, August 29, 2013—Defendant RBLA OF PA, Inc. (RBLA) has filed a motion for summary judgment. This action arises out of a dispute over the insurance proceeds disbursed after a fire destroyed the Dansbury Depot restaurant property in East Stroudsburg. Peter Andrews bought the property in January, 2009. Dansbury Choo Choo Express, inc. (Dansbury), a business corporation of which Mr. Andrews was the sole shareholder, bought the restaurant liquor license and the contents of the restaurant. Mr. Andrews then leased the restaurant to Dansbury.

Andrews engaged Tom Geffers, an insurance broker with RBLA to provide insurance brokerage services to Andrews. Andrews' discussions about insurance began with Geffers in December, 2008. Using Geffers' brokerage, Andrews purchased insurance for the Dansbury Depot property from QBE. Andrews alleges that he asked Geffers to insure the full value of the property.

A fire substantially destroyed the Dansbury Depot in October 2009. QBE, Andrews' insurer, invoked a co-insurance penalty, as the Depot did not meet the required 80 percent co-insurance rate stated in the policy. As a result, Andrews' policy with QBE covered less than his alleged damages.

Andrews brought suit against RBLA, alleging: (1) that

RBLA breached an oral contract between Andrews and Geffers for Geffers to procure "full insurance" for the Depot (contract claim) and (2) that RBLA had a duty to procure adequate insurance for the Depot, and breached that duty by failing to act with the standard of care required of an insurance broker (tort claim).

After pretrial discovery, RBLA moved for summary judgment. RBLA has advanced several theories as to why the case should be dismissed. They are: (1) plaintiffs suffered no damages; (2) the "gist of the action" doctrine bars the tort claim; (3) the tort claim is barred by Pennsylvania's two year statute of limitations; (4) the tort claim is barred by the "assumption of the risk" doctrine; (5) the complaint lacks factual foundation, as plaintiffs' blamed QBE alone for their loss during depositions; (6) the complaint lacks legal foundation as Pennsylvania does not recognize a duty for an insurance broker to procure the appropriate amount of insurance; (7) the contract claim should fail for lack of consideration between Andrews and RBLA; and (8) the general release signed by Andrews upon disbursement of funds by QBE released or discharged the claims against RBLA.

Plaintiffs filed a written response opposing RBLA's motion for summary judgment. Both parties filed briefs, and the motion was argued on July 1, 2013.

## DISCUSSION

"Summary judgment is only appropriate in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Gleason v. Borough of Moosic*, 609 Pa. 353, 361 (2011). A material fact is one that directly affects the outcome of the case. *Bartlett v. Bradford Publ'g, Inc.*, 885 A.2d 562, 568 (Pa.

Super. 2008). A court must view the evidence in the light most favorable to the nonmoving party, and all doubts as to a genuine issue of material fact must be resolved against the moving party. *Gleason*, 609 Pa. at 361 (citing *Fine v. Checcio*, 582 Pa. 253 (2005)). When the moving party satisfies its initial burden, the nonmoving party may not simply rest upon the allegations or denials contained in the pleadings, instead the nonmoving party must show there is a genuine issue for trial. *Preferred Fire Prot., Inc. v. Joseph Davis, Inc.*, 984 A.2d 20, 24 (Pa. Super. 2008). A nonmoving party's failure to adduce sufficient evidences on an issue essential to the case establishes that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Ario v. Ingram Micro, Inc*, 965 A.2d 1194, 1207 n.15 (Pa. 2009).

Plaintiffs' Contract Claim.

"A claim for breach of contract exists where it can be shown that there was a contract, a breach of a duty imposed by that contract and damages that resulted from the breach." *Koken v. Steinberg*, 825 A.2d 723, 729 (Pa. Cmwlth. 2003) (citing *General State Authority v. Coleman Cable & Wire Co.*, 365 A.2d 1347 (Pa. Cmwlth. 1976)). "The basic elements of a contract consist of an offer, acceptance, and consideration." *Koken*, 825 A.2d at 729 (citing *Hatbob v. Brown*, 575 A.2d 607, 613 (Pa. Super. 1990)).

Here, plaintiffs' contract claim must fail for want of consideration. It is not disputed that the only compensation paid to RBLA was in the form of a commission payment from QBE. It is true that "[c]ourts generally will not inquire into the value of consideration where it is clear that adequate consideration exists." *Delaware Valley*

*Factors Inc. v. Ronca*, 660 A.2d 623, 625 (Pa. Super. 1995). However, some consideration must exist for a valid contract to be formed. *SKF USA, Inc. v. W.C.A.B. (Smalls)*, 714 A.2d 496, 499 (Pa. Cmwlth. 1998). "Consideration exists where there is a bargained-for exchange by the parties to the contract." *Id.* Plaintiff has not cited, nor has this court found, any precedent for the proposition that a commission payment from a third party can be deemed consideration such that a valid contract has been formed. As there was no consideration tendered by Andrews to RBLA, no contract was formed. The contract claim will be stricken from the complaint.[1]

Plaintiffs' Tort Claim.

Andrews and Dansbury have filed responses to RBLA's motion for summary judgment. They have presented evidence from Peter Andrews, the deposition of Tom Geffers, and from an insurance professional that Mr. Geffers' conduct fell below the applicable standard of care.

Plaintiffs contend that RBLA is liable to them on a negligence theory. Their claim rests upon two pillars: (1) that RBLA should have obtained higher coverage than the 1.2 million dollar policy that was offered and ultimately purchased; and (2) that RBLA should have explained the risk inherent in the coinsurance provision of the policy.

"To state a claim for negligence, a claimant must

---

1. As the contract claim has been stricken, the tort claim will not be stricken under the "gist of the action" doctrine. "As a practical matter, the [gist of the action] doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). Since the breach of contract claim is no longer part of the case, the doctrine does not apply.

establish the presence of a legal duty or obligation; a breach of that duty; a causal link between that breach and the injury alleged; and actual damage or loss suffered by the claimant as a consequence of thereof." *Wright v. Eastman*, 63 A.3d 281, 284 (Pa. Super. 2013).

"The initial element in any negligence cause of action is the first: that the defendant owes a duty of care to the plaintiff. The existence of a duty is a question of law for the court to decide. In negligence cases, a duty consists of one party's obligation to conform to a particular standard of care for the protection of another. This concept is rooted in public policy." *R. W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005) (citations omitted).

In *Althaus v. Cohen*, 756 A.2d 1166 (Pa. 2000), our supreme court set forth a five-factor test for determining whether a duty exists: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *Id.* at 1168-69. Applying these factors to the evidence viewed in a light most favorable to the plaintiffs, results in the following.

1. The relationship between the parties.

There is no dispute here that RBLA acted as an insurance broker, not an insurance agent.

An 'insurance broker' is one who acts as a middleman between the insured and the insurer, soliciting insurance from the public under no employment from any special company, and upon securing an order, placing it with a company selected by the insured or with a company

selected by himself or herself; whereas an 'insurance agent' is one who represents an insurer under an employment by it. A broker is, in essence, employed in each instance as a special agent for a single purpose, while the very definition of an agent indicates an ongoing and continuous relationship. Since many insureds deal with the same broker for long periods of time, it is, in most cases, the continuity of the agency relationship that differs from the broker relationship; brokers and insureds are ordinarily involved in what can be viewed as a series of discrete transactions, while agents and insurers tend to be under some duty to each other during the entire length of the relationship.

Couch on Insurance, § 45:1 (3d ed.2005); *see also* 31 Pa.Code § 37.1 (drawing substantially the same distinction between "agent" and "broker")

*Wisniski v. Brown & Brown Ins. Co. of PA*, 906 A.2d 571, 578 (Pa. Super. 2006).

For ordinary negligence purposes, the relationship between an insurance broker and client is an arm's-length business relationship. Plaintiffs have asserted no claim for breach of fiduciary duty, so the question of whether there was a confidential relationship between Mr. Geffers and Mr. Andrews need not be addressed here. *Id.* at 579.

2. The social utility of the actor's conduct

The plaintiffs claim that Mr. Andrews asked Mr. Geffers to get him insurance coverage for the Dansbury Depot. Viewing the evidence in a light most favorable to the plaintiffs, when Geffers came back to him with a proposal for insurance in the amount of $1.2 million in property coverage, and $175,000 for contents, Mr. Andrews said

"...that's not enough." *"Deposition of Peter Andrews*, exhibit B to plaintiffs' response to defendant's motion for summary judgment, page 47. Mr. Geffers responded "that's all they would give." *Id.* The proposal included a coinsurance clause of 80%. Mr. Geffers did not explain the effect of this clause in the policy to Mr. Andrews before Andrews purchased the policy. *Deposition of Thomas Geffers*, exhibit A to plaintiff's response to defendant's motion for summary judgment, pages 27-29.

Plaintiffs admit in their brief that an insurance broker "is not expected to be a property appraiser regarding ascertaining the correct limit of insurance to fully insure any property for adequate limits..." *Plaintiff's brief, page 15*. There is little social utility in requiring an insurance broker who may not be trained or licensed in property appraisal to be responsible for advising property owners of the appropriate amounts of insurance coverage for their properties. In fact, the owner of the property often will be in a better position to make this determination.

The imposition of liability would remove the responsibility of Mr. Andrews to "take care of his own financial needs and expectations" before entering the marketplace to procure insurance coverage. *See Farmers Ins. Co., Inc. v. McCarthy*, 871 S.W.2d 82, 85 (Mo. App E.D. 1994). Imposing a burden on RBLA would make it responsible for determining the insured's financial needs and expectations before insuring them.

3. The nature of the risk imposed and foreseeability of the harm incurred.

If a duty to determine the appropriate limits of an insurance policy were imposed on RBLA it would transform the insurance broker into Andrews' insurance

consultant, something that Andrews did not contract RBLA for or pay a fee for. To have assumed a duty of determining appropriate limits, RBLA would be required to extensively analyze the market values of the components of Andrews' business and predict replacement values. Unless RBLA was hired and paid for this purpose, it does not make sense to shift the responsibility of determining appropriate insurance limits to the broker. Mr. Andrews was the party who knew the fair market value of the property he purchased and he knew or should have determined what its replacement value might be in the event of a fire.

4. The consequences of imposing a duty upon the actor.

Andrews has cited no Pennsylvania authority for imposing a duty upon an insurance broker to determine the correct property insurance limits. If this duty were imposed in this case, property owners would be free to insure low, pay low premiums, and sue the insurance broker in the event of a loss for failing to advise or inform customers about the need for additional coverage. The duty of an insurance broker would be greatly expanded.

5. The overall public interest in the proposed solution

The *Wisniewski* court found that there was no strong public interest in requiring insurance brokers to inspect business premises and advise clients based on that inspection. *Id.* at 581.

The *Althaus* factors do not weigh in favor of recognizing a broker's duty to recommend appropriate property damage limits. Imposing this duty would unduly burden an insurance brokers and "hinder the free marketplace of

insurance.[2] Defendant's motion for summary judgment will be granted upon this issue.

A different result is reached on the issuance of the coinsurance provision of the policy. Mr. Andrews wanted "full insurance." He was told by Mr. Geffers that he could only get $1.2 million in insurance coverage. He responded that that was not enough insurance, but accepted Geffers response that that was all he could get. Geffers did not warn him that there was a coinsurance provision in the policy that would further diminish his recovery in the event of property damage.

This policy contained the following co-insurance provision:

F. The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

2. Coinsurance

If a Coinsurance percentage is shown in the Declaration, the following condition applies:

...b. We will not pay the full amount of any loss if the value of Covered Property at the time of the loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(5) Multiply the value of Covered Property at the time

---

2. *See* cases cited in *Manzella v. Gilbert-Magill Co.*, 965 S.W. 2d 221, 228 (Mo. Ct. App. W.D. 1998).

of loss by the Coinsurance percentage;

(6) Divide the Limit of Insurance of the property by the figure determined in Step (1);

(7) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(8) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the limit of insurance. whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

Plaintiff's Opposition at Exhibit E.

Coinsurance is a way to divide the risk of loss between the insurance company and the insured, depending upon the policy limits and the actual value of the property insured. 44 C.J.S. Insurance § 6 (1993). The policy language quoted above provides that if Andrews failed to purchase limits of insurance at a minimum percentage of the value of the covered property-here eighty percent-the full amount of any partial loss is not paid.

The Nebraska Court of Appeals described the concept as follows:

Coinsurance makes common sense if explained. For example, if one has contents with a replacement value of $100,000, but purchases a limit of coverage of only $40,000, the person naturally has not insured all of the contents for full value. Rather, depending on how one looks at it, he or she has either insured 40 percent

of all the property for full value or 100 percent of the property for 40 percent of its value. If 100 percent of the contents are lost, the insured's recovery is $40,000; but in the event of a partial loss of the covered property, an insured does not receive the full replacement cost of each item of property lost up to the coverage limit of $40,000. Rather, in that event and since the insured has, in essence, only insured a percentage of the whole, he or she recovers only a percentage of the full value of the property lost, an amount determined by the policy's coinsurance formula.

Coinsurance is designed to prevent an insured, who recognizes the likelihood that losses are more likely to be partial than total, from paying a lower premium by insuring his property for less than its full value and then recovering the full value of his loss. Robert Works, The Law of the Insurance Contract § 5.4.3 (1992). Coinsurance is an effort to encourage the purchase of greater amounts of insurance by making full recovery of partial losses conditional upon maintaining a ratio (here 80 percent) between the coverage purchased and the actual value of the property. *Id.*

Coinsurance clauses are reasonable, consistent with the rule of indemnity, and preserve the solvency of insurance companies and the equitable application of insurance rates. *See,* generally, Annot., 43 A.L.R.3d Insurance-Coinsurance Requirement § 566 (1972). *See, also, Stake v. Western Assurance Co.,* 136 Neb. 735, 740, 287 N.W. 222, 224 (1939) (where insured failed to carry coverage of at least 80 percent of value of property covered, she was required under policy "to the extent of such deficit [to] bear her proportion of

any loss"), disapproved in part on other grounds, *Muff v. Mahloch Farms Co., Inc.*, 186 Neb. 151, 181 N.W.2d 258 (1970).

*Custom Auto Body Co. v. Prososki*, WL 14492, 5-6 (Neb. App. 1999) (non-precedential decision).

Provisions of the policy itself that may have a crucial effect on the payment of claims, such as the co-insurance provision in this case, should be explained by the broker, who is the one with expertise in this area. The owner does rely upon the expertise of the broker to point out policy provisions that may cause a substantial reduction in payment to the owner in the event of a claim. The duty of good faith and fair dealing "includes the duty of full and complete disclosure as to all of the benefits and every coverage that is provided by the applicable policy or policies." *Dercoli v. Pennsylvania National Mutual Insurance Co.*, 554 A.2d 906, 909 (Pa. 1989).

Our appellate courts have observed on multiple occasions that "'normal' contract principles do not apply to insurance transactions." *Drelles v. Mfr's. Life Ins. Co.*, 881 A.2d 822, 836 (Pa. Super. 2005). *See also Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131, 1139 (Pa. Super. 2003) (quoting *Collister v. Nationwide Life Ins. Co.*, 388 A.2d 1346, 1351 (Pa. 1978)) ("Contrary to Travelers' contention, 'normal contract principals [a]re no longer applicable in insurance transactions.'"). Rather, "[t]he proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured." *Bubis v. Prudential Prop. & Cas. Ins. Co.*, 718 A.2d 1270, 1272 (Pa. Super. 1998) (quoting *Frain v. Keystone Ins. Co.*, 433 Pa. Super. 462, 640 A.2d 1352 (1994)). Moreover, a court's focus upon the insured's "reasonable

expectations" is not limited only to situations in which the insurance contract might be deemed ambiguous. *Pressley*, 817 A.2d at 1140.

Decisions have affirmed that "regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents" insurance transactions ... are subject to a review of the totality of the underlying circumstances, *Pressley*, 817 A.2d at 1139 (quoting *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 521 A.2d 920, 926 (1987)). Although the parties' reasonable expectations remain "best evidenced by the language of the insurance policy[,]" *Allstate Ins. Co. v. McGovern*, 2008 WL 2120722, at 2 (E.D. Pa. May 20, 2008), a court's decision to look beyond the policy language is not erroneous under all circumstances, *see Pressley*, 817 A.2d at 1139. *Betz v. Erie Ins. Exchange*, 957 A.2d 1244, 1252-53 (Pa. Super. 2008). *Bishops, Inc. v. Penn Nat. Ins.*, 984 A.2d 982, 989-90 (Pa. Super. 2009) (footnotes omitted). *Safe Auto Ins. Co. v. Berlin* 991 A.2d 327, 331-332 (Pa. Super. 2010).

RBLA had a legal duty to deal with Andrews in a fair manner, with full disclosure of the terms of the policy. Mr. Geffers knew Andrews wanted "full insurance," and that Andrews thought his coverage was "too low." His response was that QBE would not provide more coverage. After the fire, Andrews was confronted with the unfortunate situation of QBE having been unwilling to provide greater coverage before the fire and then saying that he was underinsured after the fire occurred less than one year later. This quandary might have been avoided if Geffers warned him of the reduction in insurance coverage posed by the coinsurance clause. Andrews may then have looked elsewhere for better coverage. Defendant's motion will be denied as to this claim.

RBLA next argues that Andrews did not suffer any damages. They allege that Andrews purchased the Depot and the contents therein for $1,550,000. Between the insurance proceeds ($1,299,000) and the sale of the vacant lot and liquor license ($625,000), RBLA argues Andrews made a profit. The parties' briefs did not clarify the components of the insurance proceeds, but the coinsurance deduction was taken from Andrews' recovery. The purpose of compensatory damages is to make the plaintiff whole. *Feingold v. Southeastern Pennsylvania Transp. Authority*, 517 A.2d 1270, 1276 (Pa. 1986). "As between the innocent victim of a wrong and the person who accomplished the wrong, the law imposes on the malfeasor the obligation to make the victim whole in every phase in which the victim has suffered, to the extent that rehabilitation is possible in terms of money." *Spangler v. Helms New York-Pittsburgh Motor Expo*, 153 A.2d 490, 492 (Pa. 1959). Andrews has a claim for the insurance proceeds he lost through the coinsurance deduction.

RBLA next argues that it has been released from liability. Upon disbursing the insurance proceeds to Andrews, QBE and Andrews entered into a general release, the pertinent portion of which is as follows:

That, The Undersigned for an in consideration of the sum of *One Million Two Hundred and Ninety Nine Thousand Dollars*, ($1,299,000.00), the receipt and sufficiency of which is hereby acknowledged, does *hereby remise, release and forever discharge QBE Insurance Corporation*, its successors and assigns, and/or his, her, their heirs, executors and administrators, and also an (sic) and all other persons, associations and corporations, whether herein names or referred to or

not, and who, together with the above named, may be jointly and severally liable to the Undersigned, of and from any and all, and all manner of, actions and causes of actions and causes of action, rights, suits, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity.

(Emphasis in original). The general release does not specifically state that RBLA was discharged by the release. Further, the intent of the parties is paramount when construing a written release. *Sparler v. Fireman's Ins. Co. of Newark, N.J.*, 521 A.2d 433, 435 (Pa. Super 1987). RBLA has not offered any evidence that they were intended to be a party to the release between QBE and Andrews. RBLA has cited no cases or other authority in its brief on this issue. The court will not independently research this issue looking for support for defendant's theory. The motion for summary judgment will not be granted on this defense.

RBLA next argues that the suit should be dismissed as Andrews assumed the risk of being underinsured. Andrews stated, during his deposition, that he felt that the property was underinsured in December 2008. RBLA's motion for summary judgment, exhibit 3. However, "as a general rule, the doctrine of assumption of the risk...has been supplanted by the Pennsylvania General Assembly's adoption of a system of recovery based on comparative fault in the Comparative Negligence Act." *Hughes v. Seven Springs Farm, Inc.*, 762 A.2d 339, 341 (Pa. 2000) (internal citations omitted). In any case:

[T]he question of assumption of the risk typically remains for the jury. Only where the evidence reveals a scenario so clear as to void all questions of material fact

concerning the plaintiff's own conduct can the court enter summary judgment; in effect the court determines that the plaintiff relieved the defendant of the duty to guard him from a risk of harm regardless of the source from which the duty derived.

*Matharu v. Muir*, 29 A.3d 375, 388 (Pa. Super. 2011) (internal citations and quotations omitted). Questions of material fact exist in this case, namely: (1) whether Geffers promised Andrews that the Depot would be "fully insured" and (2) whether Geffers properly disclosed and explained the co-insurance provision. As such, dismissing the case based on the doctrine of assumption of the risk would be improper.

Finally, RBLA argues that the tort claim should be dismissed because it was untimely filed. The statute of limitations is codified at 42 Pa.C.S.A. § 5524. It provides, in pertinent part:

The following actions and proceedings must be commenced within two years:

(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

*Id.* This matter was commenced December 27, 2010. RBLA argues that because Andrews believed he was underinsured before Christmas 2008, *see supra*, that he failed to file within the two year time period the statute provides. However, Andrew's cause of action accrued on

date of the fire, October 26, 2009. Before the fire, even though Andrews may have known he was underinsured, he could not have initiated a suit, as he had suffered no damages. The October 2009 fire and the amount of the insurance recovery paid thereafter were the injuries that form the basis of his complaint. The action was timely filed.

While Andrews has not alleged a proper breach of contract claim due to the lack of consideration between himself and RBLA, he has alleged a prima facie negligence cause of action on the failure to explain the effect of the policy's coinsurance provisions. There are still genuine issues of material fact as to what was promised by Geffers, and what explanation was offered regarding the co-insurance penalty provision. The motion for summary judgment will be granted in part and denied in part.

## ORDER

And now, this 29th day of August, 2013, upon consideration of defendant RBLA's motion for summary judgment, and the arguments and briefs of both parties, It is ordered as follows:

1. RBLA's motion for summary judgment is granted as to count 1 of the amended complaint, which is stricken.

2. RBLA's motion for summary judgment as to count 2 (tort claim) is granted as to the claim for underinsuring the property. It is denied on plaintiffs' claim of negligence due to failure to explain the coinsurance provision of the policy.

3. In all other respects, RBLA's motion for summary judgment is denied.