**Carl and Ann Marie SPECE, Appellee,**

v.

**ERIE INSURANCE GROUP, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 13, 2004.

Filed May 5, 2004.

Curtis C. Johnston, Reading, for appellant.

Michael Fiorillo, Tremont, for appellees.

Before: STEVENS, PANELLA, and OLSZEWSKI, JJ.

STEVENS, J.

¶ 1 This is an appeal from the order entered in the Court of Common Pleas of Schuylkill County granting summary judgment in favor of Appellees Carl and Ann Marie Spece and against Appellant Erie Insurance Group. On appeal, Appellant contends (1) since Appellees' property was not directly hit by lightning, the loss in this case occurred solely because of water and not because of lightning, (2) the policy was not ambiguous, and (3) the trial court erred in failing to find that Appellees' loss fell within either exception nine or ten. We affirm.

¶ 2 Our scope of review is plenary when reviewing the propriety of a lower court's entry of summary judgment. *Schriver v. Mazziotti,* 432 Pa.Super. 276, 638 A.2d 224 (1994). Pursuant to Pennsylvania Rule of Civil Procedure 1035.2, sum-

mary judgment shall be rendered whenever (1) there is no genuine issue of material fact which could be established by additional evidence or expert report, or (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action. We must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party when determining if there is a genuine issue of material fact. *Schriver, supra.*

¶ 3 The undisputed material facts are as follows: On September 20, 2001, Appellees filed a complaint for declaratory judgment against Appellant. In the complaint, Appellees alleged that they own property in Schuylkill Haven, Pennsylvania, and Appellees entered into a homeowner's insurance contract with Appellant. On June 25, 2000, a transformer in Auburn, Pennsylvania was hit by lightning, resulting in a power outage to the surrounding area, including Appellees' property. Appellees alleged that, as a result of the power outage, their sump pump discontinued operation, resulting in interior water damage to Appellees' home. Appellees argued that the incident was a covered loss under the homeowner's policy and that Appellant improperly refused to cover the loss.

¶ 4 On September 26, 2001, Appellees were deposed. During the deposition, Appellee Carl Spece indicated that on June 25, 2000 he and his family went to an amusement park, left when it began to rain heavily, and returned home at approximately 9:30 p.m. Deposition of Carl Spece 9/26/01 at 8–9. Upon returning home, Mr. Spece noticed that his neighborhood was dark; the street lights, his lights, and neighbors' lights were out. *Id.* at 10. Mr. Spece immediately went into his basement,

hooked up the generator, plugged in two sump pumps to begin pumping water out of the basement, and used a Shopvac to bail out water. *Id.* at 10–11. The water rose to about two to three inches in the finished basement, drenching a carpet and some furniture. *Id.* at 12, 18. The water entered the house through the sump pump hole. *Id.* at 13. Mr. Spece contacted his power company and was told that a transformer in nearby Auburn was struck by lightning, resulting in a power outage. *Id.* at 11. Mr. Spece indicated that neither his house nor property were directly hit by lightning. *Id.* at 16. Mrs. Spece indicated that she agreed with Mr. Spece's version of the events. Deposition of Ann Marie Spece 9/26/01 at 57.

¶ 5 On October 26, 2001, Appellant filed an answer with new matter, and on October 31, 2001, Appellees filed an answer to the new matter. On December 30, 2002, Appellant filed a motion for summary judgment alleging that, although Appellant did not dispute that damage occurred to Appellees' property, such damage was not a covered loss under the homeowner's insurance policy. On January 9, 2003, Appellees filed an answer to Appellant's motion for summary judgment, along with a cross-motion for summary judgment. In the motion, Appellees alleged that damage resulted to their home because of a power outage resulting from a lightning strike and that the lightning strike and power outage were covered perils under the homeowner's insurance policy.

¶ 6 By order and opinion entered on June 4, 2003, the trial court granted Appellees' request for declaratory judgment and entered summary judgment in favor of Appellees and against Appellant. This timely appeal followed, the trial court ordered Appellant to file a concise statement

pursuant to Pa.R.A.P.1925(b), and Appellant filed the requested statement.[1]

¶ 7 Although Appellant presents its questions as three separate issues, the essence of its arguments is that, while Appellees suffered direct physical loss to their dwelling and its contents, the loss at issue fell within one of the specified exclusions. Appellant admits that, unless the loss is covered by an exclusion, then it is covered under the policy. However, Appellant specifically disagrees with the trial court's conclusion that the policy at issue is ambiguous and that Appellees were not barred from recovery under one of the policy's exclusions.

██ ¶ 8 "Where an insurer relies on a policy exclusion as the basis for its denial of coverage..., the insurer has asserted an affirmative defense, and accordingly, bears the burden of proving such defense." *Madison Construction Co. v. Harleysville Mutual Ins. Co.*, 557 Pa. 595, 605, 735 A.2d 100, 106 (1999) (citations omitted). To determine whether Appellant has met its burden of proof, we rely on well-settled principles of contract interpretation.

> [T]he task of interpreting [an insurance] contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written Instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a

court is required to give effect to that language.

*Gene & Harvey Builders v. Pennsylvania Mfrs. Ass'n*, 512 Pa. 420, 426, 517 A.2d 910, 913 (1986) [quotation omitted] (citations omitted). Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.' This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.

The polestar of our inquiry, therefore, is the language of the insurance policy.

*Madison Construction Co.*, 557 Pa. at 606, 735 A.2d at 106 (quotation and citations omitted).

██ ¶ 9 The relevant policy provisions in this case are as follows:

### PERILS WE INSURE AGAINST

We pay for direct physical loss to property insured under the *Dwelling, Other structures, and Personal Property Coverages*, except as excluded or limited herein.

### WHAT WE DO NOT COVER–EXCLUSIONS

Under the *Dwelling, Other Structures, and Personal Property Coverages*:

We do not pay for loss resulting directly or indirectly from any of the following, even if other events or happenings con-

---

1. We note that the trial court failed to file a Pa.R.A.P.1925(a) opinion in response to Appellant's court-ordered Pa.R.A.P.1925(b) statement. Generally, such a failure would require this Court to remand the matter to the trial court for the drafting of an opinion. However, in its June 4, 2003 opinion, the trial court provided its rationale for the issues Appellant has preserved for our review. Therefore, it would be futile to remand for the preparation of an additional opinion.

tributed concurrently, or in sequence, to the loss:

\* \* \*

9. by water damage, meaning:

\* \* \*

(b) water or sewage which backs up through sewers or drains or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

\* \* \*

10. by power interruption if the interruption takes place away from the residence premises. However, we will pay for loss to the contents of refrigerator or freezer units on the residence premises, from either power or mechanical failure (other than contents used for business purposes). If a loss from a peril covered under *Perils We Insure Against* happens on the residence premises we will cover only loss caused by that peril. We will pay for loss caused by a power interruption occurring on the residence premises.

■ ¶ 10 We have carefully reviewed the policy in this case, and we agree with the trial court's conclusion that the relevant exclusions in this case are ambiguous. Therefore, the exclusions must be construed against Appellant, the insurer, and we conclude Appellant failed to meet its burden that Appellees' loss was excluded. *See Madison Construction Co., supra.* As Appellant admits, the policy in this case is an All Risk Policy, meaning that all losses to the dwelling and its contents are covered except for those specifically excluded.[2] In reviewing the exclusions, Exclusion nine indicates that water which enters the home through a sump pump or sump pump well is excluded. If this were a case where Appellees' sump pump merely stopped functioning due to a mechanical failure or misuse and water entered the home, then we would conclude that the loss was excluded. However, in this case, the reason the sump pump stopped functioning, and water entered the home, was because of a power outage due to lightning. That is, the sump pump did not have a mechanical failure, was not defective, and was not misused; but rather, it could not operate because Appellees' home did not have power available to it.[3]

■ ¶ 11 As such, it is necessary to examine Exclusion ten, which discusses losses resulting from power interruption. Exception ten initially states that loss occurring because of a power interruption taking place away from the residence is excluded, unless the loss relates to the contents of a refrigerator or freezer. However, the last two sentences of Exclusion ten indicate that direct loss occurring because of a power interruption occurring on the residence premises is not excluded.

2. Appellant suggests that, by citing to a lower court case which construed a "named peril" policy, the trial court did not interpret the policy at issue as an All Risk Policy but construed it as a "named peril" policy. To the extent Appellant is correct, we conclude the error is harmless. In addition, we note that we may affirm on any basis. *See Gerace v. Holmes Protection of Philadelphia,* 357 Pa.Super. 467, 516 A.2d 354, 357 (1986) ( "As an appellate court, we may affirm the lower court by reasoning different than that used by the lower court.").

3. We specifically disagree with Appellant's contention that the loss in this case occurred solely because of water and that the lightning strike was a "remote cause." No one disputes that, but for the lightning striking the transformer, there would have been no power outage, the sump pump would not have failed, and the water would not have entered Appellees' home through the sump pump hole.

Here, the power was interrupted on Appellees' premises, resulting in a direct loss to the dwelling's basement and its contents. There is nothing in Exception ten, or any of the other exceptions, indicating that lightning must strike Appellees' property directly in order for the loss to be covered.

¶ 12 We agree with the trial court that Exception ten is ambiguous and susceptible to more than one reasonable interpretation. In addition, we conclude Exception nine conflicts with Exception ten to the extent the exceptions address the sump pump not functioning due to a power outage. Therefore, the exclusions must be construed against the insurer, Appellant, and in favor of the insured, Appellees. *See Madison Construction Co., supra.*

¶ 13 We note that we find unavailing Appellant's argument that coverage is excluded under Exception ten because the power interruption occurred at least partially away from Appellees' premises. Appellant points to the following language, which precedes the list of exclusions: "We do not pay for loss resulting directly or indirectly from any of the following, even if other events or happenings contributed concurrently, or in sequence to the loss...." Appellant argues that the lightning strike occurring in Auburn contributed directly or indirectly to the power outage on Appellees' premises, and, therefore, under the language indicated *supra,* there is no coverage. We conclude that the rele-

vant language means that if an exception, in its entirety, applies then the loss is excluded, even if other events contributed to the loss. As indicated, Exception nine and ten are ambiguous, and therefore, do not preclude coverage in this case.[4]

¶ 14 For all of the foregoing reasons, we affirm the granting of summary judgment in favor of Appellees.

¶ 15 Affirmed.

---

4. We note that, in their brief, Appellees argue Exception four is relevant in this case. Exception four indicates that there is no coverage for loss

    4. caused by constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, or air conditioning, or fire protective system, or a household appliance.

However, there is coverage if the loss is sudden and accidental.

Appellees argue that the water entering the home was sudden and accidental. However, the water did not enter Appellees' home because of a plumbing, heating, air conditioning, or fire protective system. Therefore, we conclude Exclusion four is irrelevant and does not exclude coverage, although our conclusion is based on a reason different than that argued by Appellees.