**BISHOPS, INC., a Pennsylvania Corporation, Appellant**

**v.**

**PENN NATIONAL INSURANCE, a Mutual Company, Appellee.**

**Bishops, Inc., a Pennsylvania Corporation, Appellee**

**v.**

**Penn National Insurance, a Mutual Company, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 25, 2009.
Filed Nov. 24, 2009.
Reargument Denied Jan. 29, 2010.

**984**

Kenneth R. Behrend, Pittsburgh, for Bishops.

Miles A. Kirshner, Pittsburgh, for Penn National.

BEFORE: BENDER, BOWES and CLELAND, JJ.

OPINION BY BENDER, J.:

¶ 1 Bishops, Inc., (Bishops) and Penn National Insurance (Penn National) cross-appeal the trial court's orders granting summary judgment and awarding damages in favor of Bishops limited to the $5000 in coverage afforded by an extra-cost endorsement (the Penn Pac Endorsement) to an all-risks insurance policy that Bishops purchased from Penn National. In its cross-appeal, designated by the parties as primary pursuant to Pa.R.A.P. 2136(a), Penn National asserts that Bishops' claim is precluded by the concurrent cause provision of the basic policy to which the Penn Pac Endorsement was added because the damage for which Bishops claimed coverage was jointly caused by flooding.[1] In its cross appeal, Bishops rejoins that this Court has rendered concurrent causation clauses unenforceable, declining to recognize them in the presence of an affirmative grant of coverage for which the insured paid an added premium. Bishops argues further that the Penn Pac Endorsement, which provided coverage for sewer or drain back up, changed the definition of a "covered cause of loss" in the underlying policy to provide coverage to both physical losses contemplated by the endorsement itself and losses sustained by business interruption occasioned by the events that caused the physical loss. Upon review, we find Penn National's concurrent cause exclusion unenforceable. Moreover, we conclude that Bishops is entitled to coverage under both the Penn Pac Endorsement and the Business Income (and Extra Expense) Coverage Form of the underlying policy. Accordingly, we affirm in part, vacate in part, and remand this case for additional proceedings consistent with this disposition.

¶ 2 Bishops' claim arises out of sewer and drain back-up followed by extensive flooding of its business premises on September 17, 2004, during Hurricane Ivan. Bishops is a fabric wholesaler located in the Borough of Millvale, Allegheny County.[2] During the hurricane, Bishops suffered a total loss of inventory and office equipment when water runoff backed up through the municipal drainage system during torrential rains and nearby bodies of water overflowed their banks, inundating much of the town. When, subsequent-

---

1. Flooding is excluded as a "covered cause of loss" by another provision of the policy.

2. Bishops, Inc. is closely held by Sal and Rhea Nicotra, husband and wife, who purchased the business from its retiring founders in the 1990's. Sal Nicotra had been, until the purchase, a long-term employee of the business. Rhea Nicotra became involved pursuant to the terms of the sale and now serves as Bishops' president.

ly, Bishops filed its claim with Penn National, the insurer tendered coverage for damaged office equipment under an Electronic Data Processing Endorsement Bishops had purchased at extra cost but refused to pay any amount for the physical damage sustained by Bishops' premises and inventory. In a first letter to Bishops' president Rhea Nicotra, dated October 8, 2004, Penn National asserted only the policy exclusions in the basic policy relating to generalized flooding and ground water. Those exclusions, as cited by Penn National's claims representative, provide as follows:

B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

\* \* \*

g. Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not.

(2) Mudslide or mudflow;

(3) Water that backs up or overflows from a sewer, drain or sump;

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

Letter of James J. Kepins to Rhea Nicotra, 10/8/04, at 1 (Reproduced Record (R.R.) at 64a) (quoting Penn National Insurance Policy No. CX9 0603870, Causes of Loss—Special Form, p. 2 of 7). In a follow-up letter dated October 13, 2004, following a telephone conversation with Mrs. Nicotra, Penn National asserted policy definitions to reinforce the surface and ground water exclusions found in the basic policy. The letter noted specifically that "Ground Water" means:

a. water that backs up through a sewer or drain; or

b. water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into a building, sidewalk, driveway, foundation, swimming pool, or other structure.

Letter of James J. Kepins to Rhea Nicotra, 10/8/04, at 1 (R.R. at 66a–67a) (quoting Cause of Loss Form CP 10 30 06 95, p. 1 of 9, Definitions). Significantly, neither letter acknowledged Bishops' coverage for sewer and drain backup under the Penn Pac Endorsement or business interruption under the Business Income (and Extra Expense) Coverage Form.

¶ 3 In follow-up correspondence, Mrs. Nicotra informed Penn National expressly that Bishops had purchased the Penn Pac Endorsement and noted that "the endorsement specifically removes from the language you cite ... exclusion B(1)(g)(3), i.e., water that backs up from a sewer or drain." Letter of Rhea Nicotra to James J. Kepins, undated (R.R. at 68a). In response, Penn National acknowledged the Penn Pac Endorsement but declined to extend coverage, asserting that the damage Bishops suffered was caused concurrently by generalized flooding, which is excluded as a covered cause of loss under the basic policy. In support, Penn National cited the "Causes of Loss—Special Form" as quoted above. Letter of James J. Kepins to Rhea Nicotra, 11/18/04, at 2

(citing Penn National Insurance Policy No. CX9 0603870, Causes of Loss—Special Form, p. 2 of 7 (R.R. at 70a)). Applying the concurrent cause limitation of that provision, Penn National asserted that the policy excludes from coverage even covered causes of loss if the damage at issue is caused concurrently by any excluded cause. Penn National then explained that although it had re-evaluated its earlier analysis of the policy provisions, it had concluded that "the coverage opinions expressed in our October 8th and October 16th, 2004 letters are correct and on point with the cause of loss occurring on September 17, 2004." *Id.* Following Penn National's final refusal, Bishops retained counsel and commenced this action, asserting that its purchase of the Penn Pac Endorsement provided an affirmative grant of coverage for the losses it suffered and rendered the concurrent cause exclusion of the basic policy unenforceable.

¶ 4 In its complaint, Bishops pled causes of action for breach of contract and insurance bad faith in violation of 42 Pa.C.S. § 8371. After the parties completed discovery, Penn National filed a motion for partial summary judgment on Bishops' breach of contract claim, requesting that the court enforce the concurrent cause exclusion. In response, Bishops filed a cross-motion requesting that the court deem its losses subject to coverage under the Penn Pac Endorsement and find further that sewer and drain back-up, as a covered cause of loss, entitled Bishops to coverage under the Business Income (and Extra Expense) Coverage Form up to the policy limits of $600,000. In preparation for argument, the parties entered an extensive set of Stipulated Facts, which appear in pertinent part as follows:

3. [Bishops'] action is based upon the interpretation of commercial insurance policy No. CX90603879 (hereafter referred to as the "Policy"), including endorsements and forms [issued to Bishops by Penn National].

\* \* \*

6. On or about September 17, 2004, a substantial amount of rain fell in the Pittsburgh area, specifically in Millvale, as a consequence of Hurricane Ivan.

7. Because of the significant rainfall of September 17, 2004, the sewer system in the Millvale area generally, and specifically near the location of Plaintiff's place of business, was subject to water and sewage backup through sewers, drains and pipes, causing some degree of damage to the Plaintiff's premises.

8. Subsequent to the initial backup of sewage, the significant rainfall of September 17, 2004 also caused outside flood waters to rise and enter the Plaintiff's building through windows, doors and other openings, causing additional damage to Plaintiff's building and premises.

9. It is not possible to divide or separate the damage sustained at the time of the initial sewer backup from the damage done as a result of the subsequent flood.

\* \* \*

12. The Policy provides "all risks" property damage coverage. Accordingly, all property damage to the insured premises is a "Covered Cause of Loss" unless it is specifically excluded. If an exclusion applies to a particular type of property damage, that damage is removed from the Policy's definition of "Covered Cause of Loss." The parties agree that all of the property damage suffered by Plaintiff would be covered under the Policy if there was no applicable exclusion.

13. [The primary property damage protection is set forth in a policy form entitled "Causes Of Loss—Special Form".] The "Causes of Loss—Special Form" of the Policy sets forth the following exclusions . . .:

B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

g. Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

* * *

(3) Water that backs up or overflows from a sewer, drain or sump;

* * *

14. If there was no additional coverage, the exclusions in the Causes of Loss—Special Form would remove the property damage suffered by Bishops from the definition of "Covered Cause of Loss," and Bishops would not be entitled to indemnification under the Policy.

15. The parties agree that the Policy contains two endorsements that may provide such additional coverage, but dispute the effect of those endorsements. The endorsements are known as the Penn Pac Endorsement, which provides additional insurance coverage for "Backup of sewers and drains," and the Electronic Data Processing Endorsement, which provides additional insurance coverage triggered by harm to the defined terms "hardware" and/or "software."

16. The Penn Pac Endorsement includes the following provisions. . . .

II. Additional Coverages

The following Additional Coverages are added;

f. Back Up of Sewers and Drains

We will pay for loss or damage to Covered Property caused by a back up from a sewer or drain or an overflow from a sump within the building at the described premises.

The most we will pay for each location under this Additional Coverage is $5,000 for the sum of all expenses arising from back up or overflow during each 12 month period of the policy.

Exclusion B.1.9.(3) does not apply to this Additional Coverage.

* * *

19. The parties agree that any damage caused solely by the backup or overflow from the sewers and drains at Plaintiff's building *would* be a "Covered Cause of Loss" under the Policy; *provided, however,* that Penn National contends this "Covered Cause of Loss" would extend only to the $5,000 limit set forth in the Penn Pac Endorsement.

Stipulation of Facts, at 1–5.

¶ 5 Following argument, the trial court, the Honorable Michael A. Della Vecchia, denied Penn National's motion and entered judgment in favor of Bishops, finding that "Plaintiff is entitled to receive coverage provided by the Pennpac [sic] Endorsement up to [$]5,000." Nevertheless, the court struck additional language that Bishops had included in the order that stated "[t]he damage suffered by Plaintiff was a 'Covered Cause of Loss' under the Policy including without limitation the Business Income Endorsement [*i.e.,* the Business

Income (and Extra Expense) Coverage Form].'' Order of Court, 5/2/06 (R.R. at 181a).

¶ 6 Thereafter, because Judge Della Vecchia's order had not disposed of all claims raised in the plaintiff's complaint, Bishops filed a second motion for summary judgment requesting that the court find that its claim arose out of a "covered cause of loss" as that term applies to the Business Income (and Extra Expense) Coverage Form, thereby making up to $600,000 available to satisfy Bishops' claim for business interruption under the policy. Penn National countered with a cross-motion requesting that the court enter summary judgment limiting the insurer's exposure to $5000 with respect to the contracts claim in Count I and entering judgment in its favor on the bad faith claim in Count II. After argument before the Honorable Timothy P. O'Reilly, the court declined to find any further exposure under the policy and denied Bishops' motion. The court granted Penn National's motion with the following direction:

1. This Court enters a final order with respect to the claims asserted in Count I of the Complaint, declaring that Defendants' exposure for breach of contract is limited to a maximum of $5,000 and thereby enters judgment in favor of Plaintiff and against Defendant in the amount of $5,000; and

2. Count II of the Complaint, seeking damages for bad faith pursuant to 42 Pa.C.S. § 8371 is hereby Dismissed with prejudice.

Order of Court, 12/10/07, at 1 (R.R. at 513a). Bishops and Penn National then filed the cross-appeals at issue here. Because the parties have designated Penn National's appeal as primary pursuant to Pa.R.A.P. 2136(a), we reproduce Penn National's Statement of the Questions In-

volved first. Consistent with its argument, Penn National emphasizes the concurrent cause provision on which it relied to deny Bishops' claim:

1. Whether the [h]onorable trial court committed an error of law or abuse of discretion by denying Penn National's Motion for Partial Summary Judgment? This question asks whether the concurrent causation clause in the subject insurance policy must be enforced to exclude coverage for limited property damage which may otherwise be available under a separate endorsement within said policy?

Brief for Cross–Appellant, Penn National Insurance at 4. Bishops frames the issues somewhat differently, but also consistent with its argument, to emphasize the effect of the Penn Pac Endorsement in establishing sewer and drain back-up as a covered cause of loss for the purpose of property damage and business interruption coverage:

1. Whether sewer back-up is a "covered cause of loss" under the Policy[?] This was given a qualified affirmative answer by the court below. The 2006 Orders of Court [entered by Judge Della Vecchia] determined that the Policy provides coverage for the sewer back-up at issue, which implicitly requires a finding that sewer back-up is a "covered cause of loss." However, such a finding appears to conflict with the 2007 Orders of Court [entered by Judge O'Reilly]. Bishops' Appeal concerns the 2007 Orders, and Penn National's Cross–Appeal concerns the 2006 Orders, but both parties seek from this Court a definitive interpretation of the Policy on this question.

2. If sewer back-up is a "covered cause of loss" under the Policy, how much

coverage is due under the Policy for property damage, business interruption, and/or the related "extra expenses"[?]

In the 2007 Orders the trial court held that the Policy provides $5,000 of coverage for property damage caused by the sewer back-up in this case, but provides no recovery for "business interruption" or "extra expenses."

Brief for Appellant and Cross–Appellee Bishops, Inc. at 4. Having considered the parties' arguments thoroughly, we discern that their questions merely present alternative facets of the same issues, *i.e.*, whether the Penn Pac Endorsement renders sewer and drain back-up a covered cause of loss such as to supersede or invalidate the concurrent cause exclusion in the basic policy and to make available the $600,000 coverage that Bishops seeks for losses incurred by reason of the business interruption that followed its physical loss. We respond in the affirmative to both questions.

▮▮▮ ¶ 7 In this case, the parties' claims test the construction of the insurance policy issued to Bishops by Penn National. "Generally, the proper construction of a policy of insurance is a matter of law which may properly be resolved by a court pursuant to a motion for summary judgment." *Nationwide Mut. Ins.*

*Co. v. Nixon,* 453 Pa.Super. 70, 682 A.2d 1310, 1313 (1996). Thus, the issue of whether a claim is within a policy's coverage or barred by an exclusion is properly determined provided that the policy's terms are clear and unambiguous so as to preclude any issue of material fact. *See Butterfield v. Giuntoli,* 448 Pa.Super. 1, 670 A.2d 646, 651 (1995).[3]

As with all questions of law, our scope of review of a trial court's order granting summary judgment is plenary. Our standard of review is the same as that of the trial court; we must review the record in the light most favorable to the non-moving party granting [it] the benefit of all reasonable inferences and resolving all doubts in [its] favor. We will reverse the court's order only where the appellant ... demonstrates that the court abused its discretion or committed legal error.

*Lewis,* 833 A.2d 185, 190 (Pa.Super.2003) (internal citations omitted).

▮▮▮ ¶ 8 When interpreting a policy of insurance, we employ an analysis which, while derived from the law of contracts, recognizes that most insurance transactions are not freely bargained between equals but are largely adhesive in nature. *See Betz v. Erie Ins. Exchange,* 957 A.2d 1244, 1252–53 (Pa.Super.2008).[4]

---

3. This Court has consistently recognized that "[A] proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense[.]" Under [Civil] Rule 1035.2(2), "if a defendant is the moving party, he may make the showing necessary to support the entrance of summary judgment by pointing to materials which indicate that the plaintiff is unable to satisfy an element of his cause of action." Correspondingly, "[t]he non-moving party must adduce sufficient evidence on an issue essential to its case and on which it bears the burden of proof such that a jury could return a verdict favorable to the non-moving party." Thus, a plaintiff's failure to adduce evidence to substantiate any element of his cause of action entitles the defendant to summary judgment as a matter of law.
*Lewis v. Philadelphia Newspapers, Inc.,* 833 A.2d 185, 190 (Pa.Super.2003) (internal citations omitted).

4. In *Betz,* we repeated the cautionary admonition first delivered by our Supreme Court some thirty years ago in *Collister v. Nationwide Life Ins. Co.,* 479 Pa. 579, 388 A.2d 1346,

Insurance policies, like all contracts, are enforceable in accordance with the language used and the scope of their coverage may be determined by the court as a matter of law. *See Pappas v. UNUM Life Ins. Co. of Am.*, 856 A.2d 183, 187 (Pa.Super.2004). "In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Charles D. Stein Revocable Trust v. Gen. Felt Indus., Inc.*, 749 A.2d 978, 980 (Pa.Super.2000).

Nevertheless, other contract principles have only limited application. Indeed, our Courts have observed on multiple occasions that " 'normal' contract principles do not apply to insurance transactions." *Drelles v. Mfr's. Life Ins. Co.*, 881 A.2d 822, 836 (Pa.Super.2005). *See also Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131, 1139 (Pa.Super.2003) (quoting *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346, 1351 (1978)) ("Contrary to Travelers' contention, 'normal contract princi-

pals [a]re no longer applicable in insurance transactions.' "). Rather, "[t]he proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured." *Bubis v. Prudential Prop. & Cas. Ins. Co.*, 718 A.2d 1270, 1272 (Pa.Super.1998) (quoting *Frain v. Keystone Ins. Co.*, 433 Pa.Super. 462, 640 A.2d 1352 (1994)). [Moreover,] a court's focus upon the insured's "reasonable expectations" is not limited only to situations in which the insurance contract might be deemed ambiguous, *see Pressley*, 817 A.2d at 1140. In fact, our decisions have affirmed that "regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents" insurance transactions ... are subject to a review of the totality of the underlying circumstances, *Pressley*, 817 A.2d at 1139 (quoting *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 521 A.2d 920, 926 (1987)).[5] Although the parties' reasonable expectations remain "best evidenced by the language of the insurance policy[,]" *Allstate Ins. Co. v. McGovern*, 2008 WL 2120722, at *2 (E.D.Pa. May 20, 2008), a court's decision to look beyond the policy

1351 (1978). In that case, the Court observed that

"Because the insurer is in the business of writing insurance agreements, the recent trend in insurance cases has been away from strict contractual approaches towards a view that insurance policies (and other insurance contracts) are no longer private contracts in the traditional sense (if they ever were)." The traditional contractual approach fails to consider the true nature of the relationship between the insurer and its insureds. Only through the recognition that insurance contracts are not freely negotiated agreements entered into by parties of equal status; only by acknowledging that the conditions of an insurance contract are for the most part dictated by the insurance companies and that the insured cannot "bargain" over anything more than the

monetary amount of coverage purchased, "does our analysis approach the realities of an insurance transaction." *Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d [1131,] 1139 [ (Pa.Super.2003) ] (quoting *Collister*, 388 A.2d at 1353).

*Betz*, 957 A.2d at 1253 n. 1.

5. Penn National argues that Pennsylvania's reasonable expectations doctrine is limited to the circumstances in *Tonkovic*. Brief of Cross–Appellant Penn National Insurance at 35. On this point, Penn National is simply wrong. The reasonable expectations doctrine substantially pre-dates *Tonkovic, see Collister* 388 A.2d at 1351, and in the three decades since its adoption, our courts have applied the doctrine to a wide range of insurance cases, *see e.g., Betz.*

language is not erroneous under all circumstances, *see Pressley,* 817 A.2d at 1139.[6]

*Id.* at 1252–53 (Pa.Super.2008) (footnote omitted).

¶ 9 Our analysis starts from the premise that "[t]he parties agree that any damage caused solely by the backup or overflow from the sewers and drains at [Bishops'] building *would* be a "Covered Cause of Loss" under the Policy[.]" Stipulation of Facts, at 5, ¶ 19. Because the policy at issue insures for "all risks" and Penn National seeks to deny coverage on the basis of an exclusion in the policy, the insurer must bear the burden of proof to show that the exclusion is unambiguous under the circumstances so as to comport with the reasonable expectations of the insured. *See Spece v. Erie Ins. Group,* 850 A.2d 679, 682 (Pa.Super.2004) ("Where an insurer relies on a policy exclusion as the basis for its denial of coverage . . ., the insurer has asserted an affirmative defense, and accordingly, bears the burden of proving such defense."); *see also Betz,* 957 A.2d at 1252–53.

¶ 10 In support of its decision to deny coverage under the Penn Pac Endorsement and Business Income (and Extra Expense) Coverage Form, Penn National relies on the language of the concurrent cause exclusion, which, as the parties stipulated, provides that Penn National "will not pay for loss or damage caused directly or indirectly" by "water," either through flooding or through back-up from a sewer or drain. Penn National Policy, Causes of Loss—Special Form, ¶ B.1.g.(1), (3) (respectively). Had the content of this exclusion remained unaltered, application of its terms to the facts of this case would mandate, unequivocally, the exclusion from

coverage of both of the causes of Bishops' loss and we would have no occasion to consider the exclusion's concurrent causation language. With Bishops' purchase of the Penn Pac Endorsement, however, loss or damage caused by sewer or drain back-up became a covered cause of loss *without qualification* pursuant to the following language:

> We will pay for loss or damage to Covered Property caused by a back up from a sewer or drain or an overflow from a sump within the building at the described premises.

> The most we will pay for each location under this Additional Coverage is $5,000 for the sum of all expenses arising from back up or overflow during each 12 month period of the policy.

¶ 11 Exclusion B.1.g.(3) does not apply to this Additional Coverage. Commercial Property Penn Pac Endorsement, ¶ II.e.

¶ 12 Significantly, this language removes Exclusion B.1.g.(3) of the basic policy as a bar to coverage for damage caused by sewer and drain back-up *and makes no effort to restate the language that bars coverage on the ground of concurrent causation by another excluded cause of loss.* This omission fosters a measure of ambiguity unlikely to appear until the insured files a claim, confident in the notion that the endorsement he purchased rendered all aspects of the former exclusion void only to find that the insurer interprets his coverage far more narrowly. That ambiguity becomes evident upon consideration of Exclusion B.1.g.(3) *in its entirety:*

B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or

**6.** Indeed, the Court is compelled to consider "the totality of the insurance transaction involved." *Universal Teleservices Arizona, LLC v. Zurich American Ins. Co.,* 879 A.2d 230, 234 (Pa.Super.2005).

damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

g. Water

* * *

(3) Water that backs up or overflows from a sewer, drain or sump;

Penn National Insurance Policy No. CX9 0603870, Causes of Loss—Special Form, p. 2 of 7 (R.R. at 58a). Based on this language, the insured might reasonably conclude that the coverage he purchased eliminates both the specified limitation in subsection g.(3), concerning sewer and drain back-up, as well as the preliminary language in section B.1., concerning concurrent causation. Nevertheless, the insurer might concur only as to subsection g.(3) and, as Penn National did here, deny coverage on the basis of the concurrent cause language. Yet, Penn National's interpretation is not necessarily dispositive; both section B.1. and subsection g.(3) are component parts of "Exclusion B.1.g.(3)." Although section B.1. retains meaning so long as any specific exclusion follows it, the language of subsection g.(3) depends on section B.1. for any semblance of linguistic coherence; subsection g.(3) on its own is meaningless. Thus, we can discern no reason why an insured who purchased the Penn Pac Endorsement in reliance on the sewer and drain back-up it provided might not conclude, quite reasonably, that the elimination of "Exclusion B.1.g.(3)" should not include elimination of the concurrent cause language as it applies to sewer and drain back-up.

¶ 13 Accordingly, we find the intent embodied in the Penn Pac Endorsement uncertain when applied to Exclusion B.1.g.(3), and subject to more than one reasonable interpretation even if the language it uses appears clear. Conse-

quently, we find both the Penn Pac Endorsement and Exclusion B.1.g.(3) latently ambiguous as they relate to one another. *See Betz*, 957 A.2d at 1254 n. 2 (noting that "latent ambiguity" occurs when "language that appears clear is subject to more than one reasonable interpretation when applied to a particular set of circumstances"). In view of this ambiguity, the failure of the Penn Pac Endorsement to restate the concurrent cause endorsement—or to otherwise delineate a portion of the Exclusion remaining—is highly probative of the manner in which we proceed and requires that we interpret the relevant provisions in favor of the insured. *See Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 963 (Pa.Super.2007) ("When a provision of a policy of insurance is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer."); *Spece*, 850 A.2d at 682.

¶ 14 In view of the evident linguistic joust between these controlling provisions of Penn National's policy, we find a significant indicator of the parties' intent—and the insured's expectations—in the fact that the insured paid an added premium for the coverage the Penn Pac Endorsement purports to unlock because the basic policy, in which the concurrent cause language appears, would otherwise exclude coverage. Thus, the insured purchased additional coverage ostensibly to make up for deficiencies in the basic policy only to find its claim denied not by virtue of any limitation on the coverage it bought but because ancillary language *in the basic policy* barred coverage for *another* excluded loss. Such a result strikes us as a variant of the "sleight of hand" we rejected in *Betz*, allowing an insurer to create the appearance of coverage using an amendatory endorsement tailored to cover a stated risk only to

deny coverage when that risk comes to fruition by citing language not suggested by the endorsement. *See Betz*, 957 A.2d at 1256–57.[7] Given that the concurrent causes of loss, flooding and sewer and drain back-up, were ineluctably linked by the effect of a hurricane on the municipal drainage system, we find this point particularly salient. No insured would purchase extra coverage for an added premium in the expectation that its claim under that coverage would be denied because the covered cause of loss, *i.e.*, sewer and drain back-up, was itself caused by an excluded cause of loss, *i.e.* flood, when the two would naturally occur together. Nevertheless, the interpretation Penn National urges would validate just such an unseemly result and in so doing undermine the reasonable expectations of the insured.

¶ 15 By Penn National's own admission, no Pennsylvania court has interpreted concurrent cause language so expansively in the face of an affirmative grant of coverage for which the insured paid an additional premium. Brief for Cross–Appellant, Penn National Insurance at 22, 29. On the contrary, in *Spece*, a panel of this Court found a concurrent causation exclusion unenforceable *even as applied within the basic policy* on the basis that the policy language provided conflicting indications of whether the cause of loss the insureds suffered was specifically excluded from coverage. *See Spece*, 850 A.2d at 683–84. We reached our determination on the implicit conclusion that if the cause of loss itself could not be stated without ambiguity, a concurrent cause exclusion of that cause of loss could not be enforced. *See id.* at 684. Penn National asserts that the

holding in *Spece* is limited to the facts of that case and the specific terms of the policy it interpreted. Brief of Cross–Appellant, Penn National Insurance, at 33. We neither accept nor reject Penn National's characterization of *Spece;* in point of fact, every holding arising from application of an insurance policy to a given set of facts is specific to that policy and those facts. Consequently, a case may be of great value or little to the extent that the circumstances at issue are analogous to those in the current case. Judged by this measure, however, the multiple cases on which Penn National relies from other jurisdictions are substantially less probative than the few expressions in our own jurisprudence that appear to hold concurrent causation exclusions in disfavor.

¶ 16 Unlike the courts of other jurisdictions on whose holdings Penn National relies, we have found the Endorsement and Exclusion provisions ambiguous to the extent that they fail to provide a clear indication of the continuing role of the concurrent causation language of Exclusion section B.1. after the insured's purchase of the extra cost Endorsement. Indeed, our construction, based on the express language of the Penn Pac Endorsement, finds little basis for the continued viability of the concurrent cause exclusion to sewer and drain back-up under the policy. By contrast, in each of the cases Penn National cites, Brief for Appellant at 22–33, the respective courts upheld concurrent cause provisions. *See Leonard v. Nationwide Mut. Ins. Co.,* 499 F.3d 419 (5th Cir.2007); *Noran Neurological Clinic, P.A. v. Travelers Indem. Co.,*

---

7. In *Betz,* we apportioned the burden of proof to the insurer to disprove coverage under an "all risks" policy with a concurrent cause exclusion reasoning that "[a]ny other construct would merely encourage insurers to orchestrate a shell game of exclusions and

exceptions to exclusions (or 'named peril coverage extensions'), ... in full recognition that the ultimate risk of loss would rest upon the insured notwithstanding his payment of an extra premium for coverage he reasonably thought he was getting."

229 F.3d 707 (8th Cir.2000); *Front Row Theatre, Inc. v. American Mfr's. Mut. Ins. Co.,* 18 F.3d 1343 (6th Cir.1994); *Assurance Co. of Am., Inc. v. Jay–Mar, Inc.,* 38 F.Supp.2d 349 (D.N.J.1999); *Executive Corners Office Building v. Maryland Ins. Co.,* 1999 WL 33283330, 1999 U.S. Dist. LEXIS 23444 (D.N.D.1999); *B & W Heat Treating Co. v. Hartford Fire Ins. Co.,* 23 A.D.3d 1102, 803 N.Y.S.2d 870 (2005). Nevertheless, to the extent these decisions apply different language in differently structured policies, every one is distinguishable.

¶ 17 Of controlling significance is the fact that in every such case, without exception, the respective courts interpreted concurrent cause exclusions as they appeared in the insurers' basic policies, determining only whether a cause of loss otherwise *covered by the basic policy* was excluded from coverage when it occurred concurrently with a cause of loss *excluded in the basic policy. None of those cases addresses the modifying language of an extra-cost endorsement on the language of the basic policy, the ambiguity that it created or the reasonable expectations of an insured in light of that ambiguity.* Thus, those courts did not confront the linguistic interplay we address here. Consequently, they were able to find the language of the concurrent cause exclusion unambiguous as it applied to claims made under the basic policy. Given the language they considered and the circumstances to which they applied it, we might well have reached the same conclusions. Nevertheless, those scenarios are not before us. Accordingly, we do not find these cases Penn National cites apposite to our disposition.

 ¶ 18 Given our determination that the concurrent cause language of Exclusion B.1.g.(3) is not enforceable to exclude coverage of the loss Bishops sustained, our inquiry shifts to the extent of coverage available to Bishops under both the Penn Pac Endorsement and the Business Income (and Extra Expense) Coverage Form. This issue grounds Bishops' second question on appeal. Bishops contends that "once it is [established] that sewer back-up is a "covered cause of loss," coverage follows automatically to the limits of both the [Penn Pac] Endorsement ($5,000 for physical damage and $25,000 for extra expenses) and the Business Income (and Extra Expense) Coverage Form ($600,000)." Brief for Appellant and Cross–Appellee Bishops, Inc., at 46. Disposition of this issue depends upon the interaction of two specific provisions of the policy. Inasmuch as both of the provisions in question are not ambiguous, their application to the facts before us is largely mechanical.

¶ 19 Our analysis proceeds in recognition that Bishops purchased an "all risks" policy. Accordingly, the policy's definition of a "covered cause of loss" is broad, as stated in the policy's "Causes of Loss—Special Form:"

A. **COVERED CAUSES OF LOSS**

When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

1. Excluded in Section B., Exclusions; or

2. Limited in Section C., Limitations; that follow

Penn National Insurance Policy No. CX9 0603870, Causes of Loss—Special Form, p. 1 of 7 (R.R. at 57a). Initially, we note that the term "Special Form" appears in the Declarations pages relative to coverages for "Business Income Including Extra Expense," "Your Business Personal Property," and "Building." *Id.,* Declarations, (R.R. at 17a–18a). Assuming *arguendo* that "Special Form" comports with the use of "Special" as stated above, only those coverages are limited to "RISKS OF DI-

RECT PHYSICAL LOSS." *Cf. Spece,* 850 A.2d at 683 (recognizing that all risk policies provide coverage for all losses not specifically excluded by the policy language). In addition, although loss by "back[ ] up from a sewer, drain or sump" was initially excluded by "Section B., Exclusions," Bishops' purchase of the Penn Pac Endorsement rendered such an event covered subject to a limitation on the amount of "expenses" incurred which resulted from "loss or damage to Covered Property" and a further limitation on "Extra Expense."

¶ 20 As recognized by the parties in their Stipulation, the applicable language of the Penn Pac Endorsement specifies the scope and limitations of its coverage as follows:

## II. ADDITIONAL COVERAGES

The following Additional Coverages are added:

**e. Back Up of Sewers and Drains**

We will pay for loss or damage to Covered Property caused by a back up from a sewer or drain or an overflow from a sump within the building at the described premises. The most we will pay for each location under this Additional Coverage is $5,000 for the sum of all expenses arising from back up or overflow during each 12 month period of the policy.

Penn National Insurance Policy No. CX9 0603870, Commercial Property Penn Pac Endorsement, p. 1 of 7 (R.R. at 29a). In addition, the Endorsement provides the following coverage for "Extra Expense"

## II. ADDITIONAL COVERAGES
* * *

**g. Extra Expense**

We will pay up to $25,000 for the actual and necessary Extra Expense you sustain due to direct physical loss or damage to property, including personal property in the open (or in a vehicle) within 100 feet, at premises which are described in the Declarations caused by or resulting from any Covered Cause of Loss.

*Id.* at p. 2 of 7 (R.R. at 30a). Although the Endorsement offers no definition of "expense," as that term is used in section II.e. (Back Up of Sewers and Drains), it does provide the following definition for "Extra Expense":

**g. Extra Expense**
* * *

(2) Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

*Id.* Significantly, this provision also uses the term "expense" without defining it. Consequently, we rely on a definition of the term as it appears in Black's Law Dictionary:

**expense,** *n.* An expenditure of money, time, labor, or resources to accomplish a result; esp., a business expenditure chargeable against revenue for a specific period. Cf. COST (1)—**expense,** *vb.*

BLACK'S LAW DICTIONARY 617 (8th ed. 1999). On the basis of this definition, we conclude that the foregoing provisions of the Endorsement address coverage for "business expenditure[s] chargeable against revenue[.]" *Id.* Such expenditures must have been incurred either "due to direct physical loss or damage to [covered] property [from a covered cause of loss];" *i.e.* expense, or "would not have [been] incurred if there had been no direct physical loss or damage to [covered] property

[from a covered cause of loss];" *i.e.*, extra expense. Indeed, these definitions comport seamlessly with the Endorsement's delineation of the remaining elements of "extra expense," which describe the "specific period," *see id.*, for which such "expenses" remain covered under the policy. *See* Penn National Insurance Policy No. CX9 0603870, Commercial Property Penn Pac Endorsement; §§ (3)(a), (b), (c); p. 2 of 7 (R.R. at 30a). Significantly, the Endorsement's descriptions make no reference to any form of detriment suffered by the insured other than expenditures. If the endorsement's descriptions were in fact intended to address other forms of detriment, we would expect the use of more inclusive language.[8] Therefore, we conclude that the provisions of the Endorsement at issue provide no coverage for other forms of detriment *and cannot be interpreted to limit coverage of them.* Thus, while the Penn Pac Endorsement covers "expenditures" as costs incurred by the insured up to $5000 as "expenses" and an additional $25,000 as "extra expenses," other forms of loss remain recoverable under other provisions or endorsements of the policy. We conclude accordingly that the trial court ruled correctly in awarding coverage for Bishops in the amount of $5000 but erred in failing to award further coverage for "extra expenses."

¶ 21 Bishops asserts that coverage for other forms of loss, *i.e.*, loss of revenue through business interruption occasioned by the drain and sewer back-up, are eligible for coverage under the policy's Business Income (and Extra Expense) Coverage Form. Brief for Appellant and Cross–Appellee Bishops, Inc., at 51. Under this Business Income Form, the policy covers loss of business income up to $600,000

provided that the loss arises from a "Covered Cause of Loss." *See* Penn National Insurance Policy No. CX9 0603870, Business Income (and Extra Expense) Coverage Form (R.R. at 21a). The policy defines "Business Income" as follows:

**A. COVERAGE**

* * *

 2. **Business Income**

 Business Income means the:

 a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

 b. Continuing normal operating expenses incurred, including payroll.

*Id.* Significantly, the Business Income (and Extra Expense) Coverage Form does not define "covered cause of loss" in a way unique to this provision of the policy, but instead incorporates the definition that appears in the Causes of Loss—Special Form, which appears to provide default definitions for the remainder of the policy. *See id.* As we discussed, *supra,* the Causes of Loss—Special Form defines a "covered cause of loss" to include all "risks of direct physical loss" unless the loss is excluded in "Section B., Exclusions." Although the risk of loss by sewer and drain back-up had been excluded pursuant to Section B.1.g.(3), that exclusion ceased upon Bishops' purchase of the Penn Pac Endorsement, which, as we have discussed, deactivated the sewer and drain back-up exclusion and affirmatively granted coverage for sewer and drain back-up. Accordingly, sewer and drain back up was rendered a "risk of direct physical loss," *see* Causes of Loss—Special Form, § A,

---

8. For example, Black's defines "loss," another term not defined by the policy, in pertinent part, as "3. Insurance. The amount of financial detriment caused by an insured person's death or an insured property's damage, for which the insurer becomes liable." BLACK'S LAW DICTIONARY 963 (8th ed. 1999).

not "excluded in Section B., Exclusions[,]" and therefore, a "Covered Cause of Loss" under the Causes of Loss—Special Form. As the Business Income (and Extra Expense) Coverage Form relies expressly on that Causes of Loss—Special Form to define covered causes of loss, sewer and drain back-up was rendered covered upon Bishops' purchase of the Penn Pac Endorsement.

¶ 22 In opposition to this conclusion, Penn National argues that Bishops' argument, and by extension, our conclusion,

ignores the express limitation found if one reads the prefatory portions of the Pennpac [sic] Endorsement.... [I]mmediately below the title of the Pennpac [sic] Endorsement, at the top of the first page and in **bold** print, this endorsement identifies those other coverage forms which are modified thereby. While the Building and Personal Property Coverage Form and the Causes of Loss—Special Form are modified in the limited ways discussed above, a reading of this section of the policy shows that the Business Income (and Extra Expense) Coverage Form is simply not mentioned. Because this endorsement expressly identifies those portions of the policy which it does modify, and because the section of the policy under which coverage is sought is not so identified, the only rational conclusion is that the flood water exclusion, which is clearly applicable to the claim for loss of business income, is not modified in any way by the Pennpac [sic] Endorsement.

Reply Brief of Cross–Appellant, Penn National Insurance, at 13–14. Penn National's argument on this point misconstrues Bishops' claim and simultaneously strengthens Bishops' case. Contrary to Penn National's presumption, Bishops' right to coverage is not based upon any modification made to the Business Income

(and Extra Expense) Coverage Form by the Penn Pac Endorsement. Rather, Bishop is entitled to coverage by virtue of the Business Income (and Extra Expense) Coverage Form's incorporation of the definition of "covered cause of loss" from the Causes of Loss—Special Form of the basic policy. As we have explained, that definition was expressly modified by the Penn Pac Endorsement to include sewer and drain back-up—and Penn National's argument above effectively concedes that modification. *See id.* Accordingly, we find Bishops' right to coverage under the Business Income (and Extra Expense) Coverage Form clear. Consequently, the trial court erred in refusing coverage for Bishops' losses under that provision.

¶ 23 Finally, we note that both parties, in their respective reply briefs, raise the issue of the whether the trial court's entry of judgment in favor of Penn National on Bishops' statutory claim of bad faith should be sustained. The respective discussions appear to be prompted by passing reference in Bishops' initial brief as cross-appellee, *see* Pa.R.A.P. 2113(a), requesting that this Court "reverse the trial court's ruling that Penn National did not violate the Pennsylvania Insurance Bad Faith Statute, 42 Pa.C.S.A. § 8371, and to remand that issue for decision on the merits." We note, however, that this request is not supported by any discussion in the body of Bishops' initial brief, nor is the underlying issue raised in Bishops' Statement of the Questions Involved as required by Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Although Rule 2113, which prescribes the content of Reply Briefs, allows an appellant "to reply to matters raised by appellee's brief and not previously addressed in appellant's brief[,]" it does not sanction the use of Reply Briefs to raise new issues.

*See Filoon v. Pennsylvania Public Utility Com'n,* 167 Pa.Cmwlth. 693, 648 A.2d 1339, 1342 n. 2 (1994) ("A reply brief may not be used as an opportunity to raise additional issues on appeal."). *See also Leeward Const., Inc. v. Com., Dept. of Environmental Protection,* 821 A.2d 145, 152 n. 7 (Pa. Cmwlth.2003) (same). In this case, the parties cross-appealed. Thus, either party could have raised the bad faith issue in its Statement of the Questions Involved. Nevertheless, because Bishops is the party specifically aggrieved by the trial court's order, which declined to find bad faith, Bishops was invested with the burden of going forward on that point. Because it failed to carry that burden, we have no occasion to address its bad faith claim and we do not reach its merits.

¶ 24 For the foregoing reasons, we affirm the orders of the respective trial judges to the extent they find a right to coverage for "expenses" under the Penn Pac Endorsement, but vacate those orders to the extent that they find no coverage for "extra expenses" under the Penn Pac Endorsement or under any provision of the Business Income (and Extra Expense) Coverage Form.

¶ 25 Summary Judgment **AFFIRMED IN PART** and **VACATED IN PART.** Case **REMANDED** for further proceedings consistent with this Opinion. Jurisdiction **RELINQUISHED.**