J-S06001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| ISAAC'S AT SPRING RIDGE, LLP | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MMG INSURANCE COMPANY | : | No. 455 MDA 2021 |

Appeal from the Order Entered March 2, 2021
In the Court of Common Pleas of Lancaster County
Civil Division at No: CI-20-03613

BEFORE:   STABILE, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:               **FILED: JUNE 20, 2023**

Appellant, Isaac's At Spring Ridge, LLP, appeals from the March 2, 2021

order granting judgment on the pleadings in favor of Appellee, MMG Insurance

Company.  We affirm.

The trial court recited the pertinent facts:

> [Appellant] is the owner and operator of Isaac's at Spring
> Ridge, LLP, a deli and restaurant located in Wyomissing,
> Pennsylvania.  [Appellant] purchased a Special Business Owner's
> Policy with Business Valu-Pak and Pennsylvania Endorsements.
> The policy provided coverage for the period December 31, 2019
> to December 31, 2020.  On March 6, 2020, the Governor of the
> Commonwealth of Pennsylvania issued a Proclamation of Disaster
> Emergency declaring the Covid-19 pandemic a disaster
> emergency.  On the same day, the order of the Governor of the
> Commonwealth of Pennsylvania Regarding the Closure of All
> Businesses That Are Not Life Sustaining ("Order") was issued
> closing all restaurants and bars to dine-in operations.
> Accordingly, [Appellant] closed its dine-in operations but all other

_____

[*] Former Justice specially assigned to the Superior Court.

aspects of [Appellant's] business were permitted to continue. [Appellant filed a claim with [Appellee] requesting coverage for their pandemic-related business interruption income losses caused by the dine-in ban. [Appellee] denied [Appellant's] claim explaining that there was no coverage under [Appellant's] policy.

Trial Court Opinion, 6/11/21, at 2 (pagination ours).

Appellant commenced this action on May 14, 2020, with a complaint seeking a declaratory judgment. Appellee filed a motion for judgment on the pleadings on October 29, 2021. The trial court heard argument on February 24, 2021. On March 2, 2021, the trial court granted Appellee's motion. This timely appeal followed. Appellant presents four questions:

1. Whether the trial court erred in determining the Policy 'explicitly excludes coverage for loss or damage caused by or resulting from any virus' when [Appellant] purchased an enhancement that contained no virus or bacteria exclusion?

2. Whether the trial court erred when it determined [Appellant] was not entitled to coverage because it 'suffered no direct physical loss of or damage to its premises' when the Policy is ambiguous because it can reasonably be read to differentiate between 'loss of' and 'damage to' property?

3. Whether the trial court erred when it failed to construe the ambiguous Policy against [Appellee] when it determined the Policy did not provide coverage for the losses that [Appellant] sustained when Governor Wolf closed its dine-in restaurants in response the Covid-19 pandemic?

4. Whether the trial court erred when it failed to focus its coverage inquiry on the reasonable expectation of the insured, here, [Appellant]?

Appellant's Brief at 4.

We analyze the trial court's entry of judgment on the pleadings as follows:

> Entry of judgment on the pleadings is appropriate when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. Our scope of review is plenary and we will reverse only if the trial court committed a clear error of law or if the pleadings disclose facts that should be submitted to a trier of fact. We accept as true all well-pleaded allegations in the complaint.

*Okeke-Henry v. Sw. Airlines, Co.*, 163 A.3d 1014, 1016–17 (Pa. Super. 2017).

Because this case involves interpretation of an insurance policy, we note the following:

> An insured may invoke the Declaratory Judgments Act, 42 Pa.C.S.A. § 7531, et seq., to determine whether an insurance contract covers an asserted claim. Where the language of the policy is clear, this Court must give it effect. Also, we do not treat the words in the policy as mere surplusage and, if at all possible, we construe the policy in a manner that gives effect to all of the policy's language. We will construe any ambiguity in favor of the insured. Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning. The insured bears the initial burden of establishing that the asserted claim is covered. If the insured is successful, the insurer bears the burden of establishing the applicability of an exclusion.

*MacMiles, LLC v. Erie Ins. Exch.*, 286 A.3d 331, 333-34 (Pa. Super. 2022) (*en banc*) (internal citations and quotation marks omitted). Insurance exclusions are to be construed strictly. *First Pennsylvania Bank, N.A. v. Nat'l Union Fire Ins. Co.*, 580 A2d 799, 802 (Pa. Super. 1990).

Appellant alleges it is entitled to coverage for losses arising from the Covid-19 pandemic and the resulting closure of in-person dining at eateries

throughout the Commonwealth. The pertinent provisions of its all-risks insurance policy (the "Policy") issued by Appellee, are specified in the Businessowners Coverage Form:

**Section I – Property**

**A. Coverage**

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

Policy, Businessowners Coverage Form, § I(A).[1] A Covered Cause of Loss is "Direct physical loss unless the loss is excluded or limited under Section I – Property." *Id.*at § I(A)(3). The Policy also covers business income during suspension of operations caused by a "direct physical loss of or damage to" Appellant's covered property. *Id.* at § I(A)(5)(f)(1)(a). Recovery of lost business income is limited to the "period of restoration." *Id.* The period of restoration ends when the covered property is "repaired, rebuilt, or replaced[,]" or when business resumes "at a new permanent location." *Id.* at § I(H)(9)(a)(2). The Policy excludes coverage for damage resulting from viruses or bacteria. *Id.* at § I(B)(1)(j).

In addition, Appellant purchased an endorsement titled the "Businessowner Valu-Pak Plus Endorsement (the "Endorsement"). The Endorsement begins:

---

[1] The Policy appears in the certified record as Exhibit A to Appellant's May 14, 2020 complaint.

This endorsement modifies the insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM[2]

The following is a summary of revised limits of insurance, additional coverages and coverage extensions provided by this endorsement. This **endorsement is subject to the provisions of your policy which means that it is subject to all limitations and conditions applicable to this Coverage Form unless specifically deleted, replaced, or modified herein**."

Endorsement, preamble (emphasis added). The Endorsement tracks the coverage provision of the Policy, in that it covers "physical loss of or damage to Covered Property." Endorsement, at § I. The Endorsement does not exclude damage resulting from virus or bacteria, nor does it specifically delete the Policy's virus and bacteria exclusion.

As noted above, Appellant's first argument is that the trial court erred in finding that the Policy's virus and bacteria exclusion (the "Virus Exclusion") applies here. Appellant does not deny that the "Virus Exclusion", on its face, would exclude coverage for its claim. Rather, Appellant argues that the Endorsement, which it purchased at extra cost, and which does not contain a virus exclusion, overrides the Policy's Virus Exclusion.

The trial court found that the Endorsement enhances certain coverages, provided in the policy, but does not create coverage for a situation expressly excluded in the Policy. In the trial court's words, the Endorsement is "an

---

[2] "Businessowners Coverage Form" is the heading of the entire insurance contract. It includes the Policy and Endorsement.

enhancement policy meaning it enhances the benefits already existing in the [Policy]. One cannot enhance what has never existed." Trial Court Opinion, 1/11/21, at 5 (pagination ours). Appellant concedes that the trial court's interpretation is reasonable but argues that it is equally reasonable to read the Endorsement as overriding the Virus Exclusion. Appellant relies on ***Bishops, Inc. v. Penn Nat'l Ins.***, 984 A.2d 982, 986 (Pa. Super. 2009), ***appeal denied***, 20 A.3d 482 (Pa. 2011), for the proposition that ambiguous provisions in insurance policies, *i.e.*, those that are subject to more than one reasonable interpretation, are to be construed in favor of coverage. Appellant's statement of the law is correct, but his reading of the Policy and Endorsement is not.

In our view, the plain language of the Policy and Endorsement defeat Appellant's argument. The Endorsement provides revised coverage limits, additional coverages, and coverage extensions, but those are subject to limitations of the Policy unless "specifically deleted, replaced, or modified" in the Endorsement. Endorsement, preamble. Consistent with the preamble, the Endorsement lists coverage limits for various occurrences, provides coverage for items not addressed in the Policy, including, among many other things, accounts receivable, computer equipment, fine arts, valuable papers and records. Endorsement, § IV. Likewise, the Endorsement contains numerous exclusions. Endorsement, at § V. While several of those exclusions

are duplicative of exclusions contained within the Policy, nowhere does the Endorsement specifically modify or delete the Policy's Virus Exclusion.

As noted above, we are to treat none of the policy language as surplusage and give effect to all its terms. *MacMiles*, 286 A.3d at 333-34. The Policy sets forth the basis terms of coverage, subject to exclusions including the Virus Exclusion. The Endorsement sets forth enhancements and additions to the coverage provided in the Policy, which are also subject to exclusions and conditions as provided in the Endorsement. The Endorsement is silent on the Policy's Virus Exclusion. To infer, from that silence, that the Endorsement vitiates the Virus Exclusion would reduce the Virus Exclusion to mere surplusage, and would contradict Endorsement's preamble, which provides that the Endorsement does not delete any provision of the Policy unless specifically so stated.

Because Appellant has not offered any meritorious argument in support of reversing the trial court's conclusion that the Virus Exclusion bars coverage, we need not analyze Appellant's remaining arguments. We note, however, that the Policy and the Endorsement both provide coverage for "physical loss of or damage to…" covered property. These provisions are substantively identical to those at issue in *MacMiles*. For the reasons explained in that case, Appellant's claim for coverage would fail even in the absence of a virus

exclusion.[3]  The trial court properly granted Appellee's motion for judgment on the pleadings.

Order affirmed.

Judge Nichols concurs in the result.

President Judge Emeritus Stevens notes his dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/20/2023

---

[3]  We are cognizant that this Court reached a different conclusion on similar facts in **Ungarean v. CNA**, 286 A.3d 353 (Pa. Super. 2022).  Appellant did not seek to file supplemental briefs addressing **MacMiles** or **Ungarean**.